[908 NYS2d 57]

Wᴉʟʟɪᴀᴍ Cᴏʀsᴇʟʟᴏ et al., Respondents-Appellants, v Vᴇʀɪᴢᴏɴ
New Yᴏʀᴋ, Iɴᴄ., Formerly Known as New Yᴏʀᴋ Tᴇʟᴇᴘʜᴏɴᴇ
Cᴏᴍᴘᴀɴʏ, et al., Appellants-Respondents.

Second Department, September 14, 2010

**APPEARANCES OF COUNSEL**

*Kirkland & Ellis LLP*, New York City (*Joseph Serino, Jr.* and *William Pratt*; *Susan E. Engel* and *Patrick F. Philbin*, Washington, D.C., pro hac vice, of counsel), for appellants-respondents.

*Law Offices of David M. Wise, P.A.*, Babylon, and *Reilly Like & Tenety*, Babylon (*Irving Like* of counsel), for respondents-appellants (one brief filed).

### OPINION OF THE COURT

LEVENTHAL, J.

In this matter we consider, among other issues, whether the plaintiffs sufficiently stated a cause of action against the defendants to recover damages for inverse condemnation where, more than 20 years ago, the defendants attached a rear-wall terminal box and associated wiring to the plaintiffs' building in order to service the defendants' customers. We also consider whether that inverse condemnation cause of action is barred by the applicable statute of limitations. In addition, we address whether the plaintiffs' cause of action to recover damages for a violation of General Business Law § 349 should have been dismissed for failure to state a cause of action and as barred by the statute of limitations.

We find that the plaintiff stated causes of action to recover damages for inverse condemnation and for a violation of General Business Law § 349. However, we find the inverse condemnation cause of action to be time-barred and the General Business Law § 349 cause of action to be timely.

Factual Background

The plaintiffs, William Corsello and Evelyn Corsello, are the owners of real property improved by a four-unit apartment building at 185 Vanderbilt Avenue in Brooklyn (hereinafter the property). Evelyn Corsello acquired the property in the 1950s, and transferred it to her husband and herself as joint tenants in 1977. During the course of ownership, the plaintiffs never lived in the building, but rented it out to others.

#### The Complaint and the Amended Complaint

On or about October 23, 2007 the plaintiffs, individually and on behalf of others similarly situated, commenced the instant action against Verizon New York, Inc., formerly known as New York Telephone Company, Verizon Communications, Inc., and several John Does (hereinafter collectively Verizon). The plaintiffs alleged that, "in the 1970's or 1980's or earlier," Verizon affixed a "rear wall terminal" and "outside plant" to the property. As described by the plaintiffs, an outside-plant or public-switched telephone network consists of "wires and related infrastructure dedicated to servicing numerous persons

and buildings on a common carriage basis." The plaintiffs asserted that individual customers or buildings were serviced by connecting "station connections," also referred to, in whole or part, as "service drops," "drop wires," "block pairs," "station equipment," "customer premises equipment," and "customer premises wires," to Verizon's outside plant.

In New York City, because of, among other things, high building density and applicable law, Verizon does not use pole-mounted aerial terminal architecture; instead, it utilizes an inside-block cable architecture. Block cable architecture allows just a single cable from the street to service an entire city block. While block cable may sometimes run through telephone poles located in rear or front yards, more often it is run across rear walls of buildings located within the block being served. Block cable is then connected to terminal boxes, which are attached to the rear walls of buildings. Each rear-wall terminal will typically be fed by one or more block cables, and serve as the termination point of 25 to 200 individual station connection wires. The individual station connection wires connect to network interface devices, also attached to the rear of the building, which service the individual Verizon customers in that building.

Rear-wall terminals are not located on every building. Instead, through a single rear-wall terminal, Verizon may service not only the building to which that terminal is attached, but also other buildings.

According to the plaintiffs, "[s]ometime in the 1980's," William Corsello complained to Verizon, or its predecessor, about a metal conduit that ran from the rear-wall terminal of the subject building. Additionally, the plaintiffs asserted that William Corsello complained about the manner in which the terminal and the cables servicing it were anchored to the brick masonry of the building, as well as about the number of cables. Verizon allegedly responded that the rear-wall terminal was necessary to provide telephone service to the subject building, but failed to advise William Corsello that he could have the terminal and associated wiring removed at will without loss of telephone service to the building, or that he was entitled to compensation for hosting the terminal.

As set forth in the complaint, sometime "in 2004 or 2005" Verizon started routing new cables through the rear-wall terminal box, and William Corsello consequently complained that the new cables were tangled, but that Verizon was unresponsive.

In August 2006 William Corsello sent a letter to Verizon, noting that few tenants in the subject building used hardline telephone service. The letter asserted that Verizon's wiring and associated hardware were used primarily, if not exclusively, to service Verizon customers in other buildings, and that the subject property was akin to a community telephone pole. The plaintiffs requested that Verizon remove all the wiring that serviced customers located in other buildings, and pay them the sum of $10,000 in compensation for having interfered with their property rights.

The plaintiffs assert that, shortly thereafter, William Corsello met with two Verizon representatives, who informed him that the rear-wall terminal would not be removed, and that Verizon had the right to attach it without paying compensation.

In the amended complaint, the plaintiffs asserted six causes of action. First, the plaintiffs alleged that they were entitled to damages based on inverse condemnation. Specifically, they asserted that, under Transportation Corporations Law § 27, Verizon

> "may erect, construct and maintain the necessary fixtures for its lines upon, over or under any of the public roads, streets and highways; and through, across or under any of the waters within the limits of this state, and may erect, construct and maintain its necessary stations, plants, equipment or lines upon, through or over any other land, subject to the right of the owners thereof to full compensation for the same. If any such corporation can not agree with such owner or owners upon the compensation to be paid therefor, such compensation shall be ascertained in the manner provided in the eminent domain procedure law."

The plaintiffs further alleged that Verizon's appropriation and use of the plaintiffs' building, and others, for rear-wall terminals and outside-plant attachments constituted a taking for the public use under color of state law by an entity clothed with the power of condemnation and, thus, entitled the plaintiffs to compensation.

Second, the plaintiffs alleged that Verizon should be enjoined from attaching rear-wall terminals and outside-plant attachments to buildings in New York City, or from significantly expanding their size or function, where such terminals are used in whole or part to provide service to customers in other build-

ings, without first providing notice to the building owner concerning his or her right to compensation under Transportation Corporations Law § 27 and obtaining an agreement as to compensation in accordance with the Eminent Domain Procedure Law. Unless full compensation was paid, the plaintiffs asserted, Verizon should be required to remove all rear-wall terminals and outside-plant attachments, and remediate the damage to the property.

Third, the plaintiffs contended that they were entitled to damages for implied tenancy, in the form of back rent, and unjust enrichment. Specifically, the plaintiffs asserted that the attachment of the rear-wall terminals and outside-plant infrastructure created an implied tenancy between them and Verizon and that, since Verizon benefitted from its occupancy of the building without having paid rent, Verizon was unjustly enriched.

Fourth, the plaintiffs asserted that they were entitled to damages for Verizon's trespass. Specifically, they contended that the rear-wall terminals and outside-plant attachments were unaesthetic, damaged their property, potentially exposed tenants and others to electric shock, and provided a means for intruders to gain unlawful access.

Fifth, the plaintiffs alleged that Verizon engaged in deceptive trade practices in violation of General Business Law § 349 (h). According to the plaintiffs, Verizon had an affirmative duty to inform building owners encumbered by a rear-wall terminal, such as themselves, of their statutory right to compensation under the Transportation Corporations Law, and to obtain agreements from them. The plaintiffs argued that, instead of fulfilling that duty, Verizon maintained a "policy, custom and practice" of misrepresenting its duty, suggesting that owners had a legal obligation to acquiesce in the encumbrance of their buildings with rear-wall terminals and outside-plant attachments, so as "to avoid setting a precedent that would require it to compensate the owners of the tens of thousands of buildings in the Affected Neighborhoods," such as Brooklyn Heights, Clinton Hill, and Flushing, that were "unlawfully encumbered by [Verizon's] Rear Wall Terminals and associated Outside Plant."

Sixth and finally, the plaintiffs purported to assert a separate cause of action to recover punitive damages.

## The Plaintiffs' Letter to Verizon

Following the filing of the complaint, by letter dated November 9, 2007, the plaintiffs requested that Verizon refrain from materially altering the physical or functional status of the terminal box and related accessories at their building, without first obtaining their counsel's approval.

## Verizon's Motion to Dismiss the Amended Complaint

Prior to serving an answer, by notice of motion dated February 25, 2008, Verizon moved, pursuant to CPLR 3211 (a), to dismiss the amended complaint on the grounds that it failed to state a cause of action and that it was barred by the applicable statute of limitations.

In its supporting memorandum of law and attorney's affirmation, Verizon argued that the plaintiffs failed to state a cause of action sounding in inverse condemnation. Verizon explained that a telephone company seeking to acquire rights or interests in property may acquire a license, easement, or right-of-way from the landowner, but that if those means were unavailable, then it could resort to Transportation Corporations Law § 27 and acquire property via eminent domain. Verizon argued that, if a telephone company failed to obtain permission to use the property, the property owner could commence an action sounding only in trespass or ejectment, but that the telephone company could then invoke Transportation Corporations Law § 27 as a defense or counterclaim and acquire portions of the property through the exercise of its statutory power of eminent domain. Verizon rejected the plaintiffs' theory that Transportation Corporations Law § 27 affirmatively granted every property owner who had telephone equipment on his or her property a statutory right to full compensation, even where the telephone company had not exercised its power of eminent domain, and even though the owner may have granted permission to use his or her property. In sum, Verizon contended that the power of eminent domain was just one among many options[1] that a telephone company could invoke in order to acquire an interest in private property.

In any event, Verizon contended that it had not permanently occupied the plaintiffs' property, a showing necessary to support a claim for inverse condemnation. According to Verizon, since it

---

1. *See Antonopulos v Postal Tel. Cable Co.*, 261 App Div 564, 569 (1941), *affd* 287 NY 712 (1942).

offered to remove all wiring that was servicing other buildings, the plaintiffs' claim of inverse condemnation could not stand. Alternatively, Verizon argued that the inverse condemnation claim was barred by the statute of limitations.

Verizon further argued that the cause of action for injunctive relief, based as it was on Transportation Corporations Law § 27, had to be dismissed since the statute did not require Verizon to inform the plaintiffs of their right to compensation.

Similarly, with respect to the cause of action alleging a violation of General Business Law § 349, Verizon again argued that Transportation Corporations Law § 27 neither established nor codified the recognition of an all-encompassing right to full compensation and, even if it did, it did not require Verizon to notify the plaintiffs of that right in accordance with the General Business Law. Verizon also contended that the plaintiffs' second cause of action was conclusory, as there were no allegations as to what Verizon allegedly did to create the impression that it was misrepresenting landowners' rights. Verizon further argued that, even if the plaintiffs stated a cause of action under General Business Law § 349, it was barred by the applicable three-year statute of limitations.

Lastly, Verizon argued that the purported cause of action to recover punitive damages was required to be dismissed as, among other reasons, it could not be recognized as a separate cause of action for pleading purposes.

### Verizon's Offer to Remove the Equipment

Following the submission of its motion to dismiss the amended complaint, Verizon, by letter dated March 27, 2008, asked for permission to enter the plaintiffs' property in order to establish the good faith basis of its "unconditional offer" to remove any equipment servicing other buildings, and to repair any damage to the plaintiffs' building. The plaintiffs responded that they did "not consider this a bona fide settlement proposal," and that they were uninterested in any settlement negotiations unless and until the Supreme Court ruled against their request for class certification.

### The Plaintiffs' Opposition to the Motion to Dismiss the Amended Complaint

In opposition to Verizon's motion, the plaintiffs argued that a constitutional taking had occurred, and the fact that Verizon offered to remove the equipment that was servicing other build-

ings did not render the taking transitory. The plaintiffs noted that the offer was made four months after the complaint was served, and contended that the facts that must govern the action were those existing at the time it was commenced. The plaintiffs further asserted that it was "obvious" that Verizon hoped to convert this action from one alleging inverse condemnation to one sounding in trespass. The plaintiffs argued that the mere fact that Verizon had the legal capacity to acquire the property through noncoercive means was not a defense to a claim of inverse condemnation because, if that were the case, a claim for inverse condemnation could never be asserted against any public or private entity with the power of eminent domain. The plaintiffs also contended that their inverse condemnation cause of action was not time-barred.

The plaintiffs argued that they stated a cause of action to recover damages for implied tenancy and unjust enrichment, and that an express agreement was not required in an action alleging an implied tenancy. They further argued that Verizon entered their building under color of law, but was unjustly enriched when it went beyond the authority granted to it by using their building as a platform to service other buildings, without compensating them.

Further, the plaintiffs argued that they stated a cause of action to recover damages for violation of General Business Law § 349 (h), as the amended complaint alleged that Verizon engaged in a practice of misleading building owners into believing that Verizon could attach rear-wall terminals, without compensation, as a lawful precondition to providing essential telephone service to their buildings. The plaintiffs argued that Verizon's deceptive conduct was directed to the consuming public at large and was consumer-oriented. The plaintiffs further argued that, because part of their General Business Law § 349 (h) cause of action alleged willful deceptive conduct, they were entitled to injunctive relief and punitive damages.

In support of their arguments, the plaintiffs submitted, inter alia, an affidavit from William Corsello and an affidavit from former Verizon employee Jeremy Walsh. Corsello stated in his affidavit that, in the 1980s, when he complained to Verizon's predecessor about the terminal, he was told that the terminal was required to provide service to the building. In his affidavit, Walsh averred that Verizon formerly employed him as an "outside plant engineer." Walsh explained that, with respect to obtaining permission or consent from owners of the buildings

encumbered with the rear-wall terminals, the established practice that he followed was best described as "attach and run." Walsh stated that it was Verizon's accepted practice to avoid advising building owners that they were not required to allow the attachment of the terminal as a precondition to receiving service; further, he averred that Verizon would not inform building owners that they were entitled to compensation for the attachment of the terminals.

### The Order Appealed From

Following oral argument, in an order dated October 17, 2008, the Supreme Court granted that branch of Verizon's motion which was to dismiss the third cause of action to recover damages for implied tenancy and unjust enrichment, and deemed the sixth cause of action to recover punitive damages to be subsumed into the fifth cause of action alleging a violation of General Business Law § 349 (h). The Supreme Court denied the remainder of the motion.

Addressing the inverse condemnation cause of action, the Supreme Court concluded that Verizon's installation of rear-wall terminals and connecting wires constituted "a permanent taking of plaintiffs' property that must be compensated." (*Corsello v Verizon N.Y. Inc.*, 21 Misc 3d 1116[A], 2008 NY Slip Op 52081[U], *8 [2008].) In addition, the Supreme Court determined that the amended complaint clearly set forth a cause of action to recover damages for inverse condemnation under Transportation Corporations Law § 27.

The Supreme Court concluded that the statute of limitations did not bar the inverse condemnation cause of action, as actions sounding in inverse condemnation could not be time-barred by virtue of Real Property Law § 261, which prohibits a telephone company from obtaining title through adverse possession.

The Supreme Court declined to dismiss the cause of action for injunctive relief, reasoning that it was a remedy contingent upon the merits of other claims that were pleaded. While the Supreme Court recognized that injunctive relief may be subsumed into another cause of action, it found that a determination with respect to that issue was premature.

The Supreme Court concluded that the third cause of action to recover damages for an implied tenancy and unjust enrichment was duplicative of the fourth cause of action to recover damages for trespass, and that any benefit that Verizon realized from its alleged unlawful occupation of the plaintiffs' property

did not give rise to a separate cause of action sounding in unjust enrichment, but merely supported their claim for damages. The Supreme Court determined that the plaintiffs stated a cause of action to recover damages for violation of General Business Law § 349 (h). It concluded that the acts of Verizon that were alleged to be deceptive, actual misrepresentations, or disinformation, as well as the allegations of Verizon's initial intrusion by stealth— referred to as "attach and run" by Walsh—and Verizon's failure to respond to the plaintiffs' demands and inquiries, were sufficiently material in causing injury to the plaintiffs to support a claim under General Business Law § 349.

Lastly, the Supreme Court determined that the cause of action to recover punitive damages was subsumed into the fifth cause of action alleging a violation of General Business Law § 349 (h).

Discussion

## I. Inverse Condemnation

### A. Failure to State a Cause of Action

Verizon contends that the Supreme Court erred in failing to dismiss the cause of action alleging inverse condemnation. The plaintiffs respond that they stated a valid cause of action to recover damages for inverse condemnation.

> "On a motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the court must afford the pleading a liberal construction, accept all facts as alleged in the pleading to be true, accord the plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Breytman v Olinville Realty, LLC*, 54 AD3d 703, 703-704 [2008]; *see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]).

A court may consider affidavits and other evidence to remedy defects in the complaint (*see Rovello v Orofino Realty Co.*, 40 NY2d 633, 635-636 [1976]; *DaCosta v Trade-Winds Envtl. Restoration, Inc.*, 61 AD3d 627, 628 [2009]).

Inverse condemnation, or de facto appropriation, is based on a showing that an entity possessing the power of condemnation has intruded onto a landowner's property and interfered with his or her property rights to such a degree that the conduct amounts to a constitutional taking, requiring the entity to purchase the property from the owner (*see O'Brien v City of*

*Syracuse*, 54 NY2d 353, 357 [1981]; *Weaver v Town of Rush*, 1 AD3d 920, 923 [2003]; *Sarnelli v City of New York*, 256 AD2d 399, 400 [1998]; *Reiss v Consolidated Edison Co. of N.Y.*, 228 AD2d 59, 61 [1996], *cert denied* 522 US 1113 [1998]; *Clempner v Town of Southold*, 154 AD2d 421, 424 [1989]; *Village of Tarrytown v Woodland Lake Estates*, 97 AD2d 338, 343 [1983]; *see also United States v Clarke*, 445 US 253, 257 [1980] [inverse condemnation is simply "shorthand description of the manner in which a landowner recovers just compensation for a taking of his [or her] property when condemnation proceedings have not been instituted"]). "The *sine qua non* for such a cause of action is that defendant's conduct must constitute a permanent physical occupation of plaintiffs' property amounting to the exercise of dominion and control thereof" (*Reiss v Consolidated Edison Co. of N.Y.*, 228 AD2d at 61; *see City of Buffalo v Clement Co.*, 28 NY2d 241, 255 [1971]).

In contrast, a trespass is an intentional physical entry onto the property of another without justification or permission (*see Woodhull v Town of Riverhead*, 46 AD3d 802, 804 [2007]; *Long Is. Gynecological Servs. v Murphy*, 298 AD2d 504 [2002]). While a trespass and a de facto taking are similar in that both require a physical entry, a trespass is temporary in nature, while a de facto taking is permanent (*see Smith v Town of Long Lake*, 40 AD3d 1381, 1382 [2007]; *Feder v Village of Monroe*, 283 AD2d 548, 549 [2001]). In other words, " 'a de facto appropriation differs from a trespass by the extent of its egregiousness and permanence' " (*Smith v Town of Long Lake*, 40 AD3d at 1383, quoting *Sassone v Town of Queensbury*, 157 AD2d 891, 893 [1990]). Thus, "an entry onto the property of another cannot be both a trespass and a taking" (*Smith v Town of Long Lake*, 40 AD3d at 1382; *see Feder v Village of Monroe*, 283 AD2d at 549).

■ Here, the plaintiffs stated a cause of action to recover damages for inverse condemnation. It is undisputed that Transportation Corporations Law § 27 cloaks Verizon with the power to condemn any private property it needs for the erection, construction, and maintenance of its equipment (*see Clempner v Town of Southold*, 154 AD2d at 424-425, quoting *Tuffley v City of Syracuse*, 82 AD2d 110, 116 [1981] [" 'Inverse condemnation, rather than trespass, is the appropriate theory for granting damages to an injured landowner where the trespasser is cloaked with the power of eminent domain' "]). Contrary to Verizon's contention, the allegations in the amended complaint are sufficient to describe a permanent physical oc-

cupation of the plaintiffs' property. The plaintiffs alleged that, in the 1970s or 1980s, and possibly earlier, Verizon installed a rear-wall terminal on, and attached outside-plant architecture to, their building. In order to affix this equipment to the plaintiffs' building, Verizon allegedly utilized "heavy duty anchors and brackets which penetrate the masonry or brick exterior . . . leading to structural damage over time." The plaintiffs complained about the rear-wall terminal, and requested that Verizon remove it, but Verizon refused (*see Village of Tarrytown v Woodland Lake Estates*, 97 AD2d at 343 [when a village continued to use private property after the owner had rightfully demanded its return, the village conducted itself as if it possessed an affirmative easement over the owner's roads and, thus, interfered with the owner's property rights to the extent that it became a repeated trespasser; since this trespasser was a governmental body with condemnation powers, there was a compensable taking of private property]).

In *Loretto v Teleprompter Manhattan CATV Corp.* (458 US 419, 427, 436 [1982], *revg* 53 NY2d 124 [1981]), the United States Supreme Court held that a permanent physical occupation of another's property, no matter how small, constitutes a taking. There, Teleprompter, a cable television company, pursuant to the authority granted it under Executive Law former § 828,[2] had installed "crossover" cables on the plaintiff's five-story apartment building, which provided service to other buildings (*id.* at 423 n 2). Under that statute, the plaintiff was prohibited from interfering with the installation, but was entitled to a one-time payment in the sum of $1, as fixed by the State Commission on Cable Television, as well as indemnification for any damage caused by the installation (*id.* at 423-424). The plaintiff commenced an action alleging that Teleprompter's installation was a trespass and, insofar as it relied on Executive Law former § 828, a taking without just compensation. The Supreme Court concluded that Teleprompter's installation of its equipment, involving a direct physical attachment of plates, boxes, wires, bolts, and screws to the building, completely occupying space immediately above and upon the roof and along the building's exterior wall, was a "permanent physical occupation" (*id.* at 438, 441). The United States Supreme Court thus remitted the matter back to the Court of Appeals to craft a procedure to determine the "proper measure of the value of the property taken" (*id.* at 441).

---

2. Now Public Service Law § 228.

Here, as in *Loretto,* the installation of the rear-wall terminal involved a direct physical attachment of a box and wires. According to the plaintiffs, the installation of this equipment deprived them of the physical use, possession, and enjoyment of that portion of their property (*see Weaver v Town of Rush*, 1 AD3d at 923 [noting that a de facto taking by one having condemnation powers constitutes a permanent interference with an owner's physical use, possession, and enjoyment of property]; *Feder v Village of Monroe*, 283 AD2d at 549; *Sarnelli v City of New York*, 256 AD2d at 400). Indeed, the plaintiffs alleged that a metal conduit running from the terminal along the building wall had been used by a burglar to enter one of their apartments. Further, according to the amended complaint, the installation was meant to be permanent as it has been attached to the wall for several years.

Verizon responds that there can be no permanent physical occupation of the plaintiffs' property where it has offered to remove the equipment servicing other buildings. As a procedural matter, it would be inappropriate to consider Verizon's offer, which was tendered only after the action was commenced. As this is a motion to dismiss, the Court may look only to the amended complaint and any evidentiary material submitted to remedy defects in the amended complaint in ascertaining whether a cause of action has been stated (*see Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]; *Rovello v Orofino Realty Co.*, 40 NY2d 633, 635-636 [1976]). Moreover, even if Verizon's offer could be considered, it would still not preclude the trier of fact from finding that a de facto taking had occurred, since, where an appropriating entity has interfered with the owner's property rights to such a degree that the conduct amounts to a constitutional taking, it is *required* to purchase the property from the owner (*see O'Brien v City of Syracuse*, 54 NY2d at 357; *Village of Tarrytown v Woodland Lake Estates*, 97 AD2d at 343). In other words, contrary to Verizon's contention, it can indeed be "forced" to acquire an interest in the plaintiffs' property.

In a related argument, Verizon contends that, unlike Teleprompter in *Loretto,* it has not exercised its condemnation power pursuant to Transportation Corporations Law § 27 and, therefore, has not taken the plaintiffs' property, since the plaintiffs can simply commence an action sounding in trespass to remove Verizon. Although Verizon correctly contends that it has not invoked its statutory condemnation power, Verizon need not have actually invoked its statutory power in a judicial forum

in order for there to be a de facto taking. A permanent physical occupation by one having condemnation powers is all that need be shown (*see Weaver v Town of Rush*, 1 AD3d at 923; *Feder v Village of Monroe*, 283 AD2d at 549; *Sarnelli v City of New York*, 256 AD2d at 400).

Verizon's additional contention that it did not intend to effect a permanent physical occupation of the plaintiffs' property is belied by the allegations that it has maintained its equipment there for approximately 30 years. Nor can Verizon credibly contend that it mistakenly intruded onto the plaintiffs' property (*cf. Mickel v State of New York*, 77 AD2d 794 [1980], *affd* 54 NY2d 858 [1981] [State's mistaken placement of public fishing signs on claimant's property was only a trespass, not a de facto taking]).

The fact that the plaintiffs pleaded a cause of action to recover damages for trespass does not preclude them from also asserting an inverse condemnation cause of action, since inconsistent causes of action may be pleaded in the alternative (*see* CPLR 3014; *Gold v 29-15 Queens Plaza Realty, LLC*, 43 AD3d 866, 867 [2007]; *Matter of Kern v Guller*, 40 AD3d 1231, 1232 [2007]). Accordingly, if a permanent physical occupation is found to have occurred, the plaintiffs would be entitled to compensation for the taking, and the trespass cause of action would be dismissed. Conversely, if only a trespass occurred, then the plaintiffs will be compensated for the transitory physical entry, and the inverse condemnation cause of action would be dismissed. We need not decide between these two theories at this stage of the action, which only involves the sufficiency of the pleadings.

Finally, Verizon's contentions regarding the "dramatic effects" of the Supreme Court's determination are vastly overstated. Contrary to Verizon's concerns, property owners' rights to eject telecommunication companies as trespassers will not be diminished. A property owner has the option of commencing an action to remove a telecommunication company as a trespasser, against which the telecommunication company may defend by invoking its statutory power to condemn private property (*see Buholtz v Rochester Tel. Corp.*, 40 AD2d 283 [1973]), or the owner may require the telecommunication company to pay compensation for its de facto taking of the property (*see Village of Tarrytown v Woodland Lake Estates*, 97 AD2d at 343). Yet, whether a telecommunication company has, in fact, appropriated private property without invoking its statutory

power or merely trespassed remains a legal determination (*see Smith v Town of Long Lake*, 40 AD3d at 1382). A telecommunication company's choice in determining whether and when to take private property will not be unsettled. A telecommunication company may wish to secure an owner's permission, or it may choose to forcibly take the property pursuant to Transportation Corporations Law § 27. But a telecommunication company cannot simply take private property without doing either of the above. While Verizon contends that it may experience the undesirable result of becoming a "new owner of innumerable perpetual easements over private property," it appears that this is precisely what the law requires.

Accordingly, the plaintiffs stated a cause of action to recover damages for inverse condemnation.

## B. Statute of Limitations

Verizon contends that the plaintiffs' cause of action to recover damages for inverse condemnation is barred by the three-year statute of limitations. The plaintiffs respond that their claim is timely, as Verizon's occupation of their property was not just a one-time invasion.

Inverse condemnation or de facto appropriation is governed by a three-year statute of limitations (*see* CPLR 214 [4]; *Linzenberg v Town of Ramapo*, 1 AD3d 321, 322 [2003]; *Sarnelli v City of New York*, 256 AD2d at 401). Such a claim begins to accrue at the time of the taking (*see Sarnelli v City of New York*, 256 AD2d at 401; *Greenman v City of Cortland*, 141 AD2d 910, 911 [1988]; *Carr v Town of Fleming*, 122 AD2d 540, 541 [1986]). Therefore, the plaintiffs' claim would be time-barred unless saved by some exception (*see Sarnelli v City of New York*, 256 AD2d at 401).

In that regard, the plaintiffs refer to Real Property Law § 261, which provides that

> "[w]henever any wire or cable used for any telegraph, telephone, electric light or other electric purpose, or for the purpose of communication otherwise than by the aid of electricity, is or shall be attached to, or does or shall extend upon or over any building or land, no lapse of time whatever shall raise a presumption of any grant of, or justify a prescription of any perpetual right to, such attachment or extension" (emphasis added).

The plaintiffs contend that the "no lapse of time" provision in

Real Property Law § 261 not only prohibits certain telecommunication companies such as Verizon from asserting a claim of adverse possession, but also serves to perpetually toll the three-year statute of limitations applicable to an inverse condemnation cause of action. Verizon counters that Real Property Law § 261 merely prohibits telecommunication companies from obtaining prescriptive rights to privately owned property through "any lapse of time," but does not act as a permanent toll of the statute of limitations for an inverse condemnation cause of action.

The issue is thus whether Real Property Law § 261 applies only to an affirmative claim by a telecommunication company against an owner's property, or whether the statute also applies to prevent the running of the statute of limitations against an owner. We find Verizon's contentions to be persuasive in this regard.

When a court is to construe a statute,

> "it is a well-established rule that resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998] [citations and internal quotation marks omitted]).

"[E]ffect and meaning should be given to the entire statute," with "every part and word thereof" forming an integrated text (*Sanders v Winship*, 57 NY2d 391, 396 [1982] [internal quotation marks omitted]). With respect to Real Property Law § 261, the word "prescription" can mean "[t]he effect of the lapse of time in creating and destroying rights" (Black's Law Dictionary 1220 [8th ed 2004]) or "[t]he acquisition of title to a thing (esp. an intangible thing such as the use of real property) by open and continuous possession over a statutory period" (*id.*). Applying either definition of prescription to Real Property Law § 261, the phrases "no lapse of time" and "prescription of any perpetual right" must be read together. Applying the natural meaning to those phrases, we find that Real Property Law § 261 only refers to situations where a telecommunication company such as Verizon affirmatively asserts rights to an owner's property by, for example, adverse possession or prescriptive easement. Consequently, Real Property Law § 261 cannot be construed to

perpetually toll the statute of limitations for an inverse condemnation cause of action asserted against a defendant such as Verizon. We note that Verizon does not claim any prescriptive right to the plaintiffs' property and, in fact, has sought to vacate the property altogether.

Somewhat instructive is the Court of Appeals' decision in *Galway v Metropolitan El. Ry. Co.* (128 NY 132 [1891]). In *Galway*, the plaintiff had owned several vacant New York City lots since 1871, situated on the corner of 57th Street and 6th Avenue. In 1878 the defendant commenced and completed the construction of its elevated railroad track adjoining the plaintiff's property. The defendant never sought to acquire an easement in the plaintiff's adjoining lots prior to the construction of its tracks. Eleven years later, the plaintiff sued the defendant, alleging that its elevated tracks and trains obstructed light, air, and access to his property. The plaintiff sought damages and a permanent injunction. On appeal, the defendant contended that, although it failed to satisfy the requisite time period to obtain an easement by prescription, and the statute of limitations did not bar the plaintiff's action sounding in continuous trespass, the plaintiff's delay forfeited his entitlement to equitable relief. In sum, the defendant asserted that laches prevented the plaintiff from obtaining a permanent injunction. The Court of Appeals disagreed, and held that the plaintiff could maintain an action for equitable relief against the defendant regardless of the 11-year delay in commencing it. In its decision, the Court explicitly distinguished between the statute of limitations for an action to recover damages for trespass and the prescriptive period required to obtain an easement in another's property. As the Court noted,

> "so long as [a] person continues to be the owner of property. . . he is entitled to invoke the protection of the [Fifth Amendment], without regard to the lapse of time that may occur before the commencement of legal proceedings, provided the *remedy is claimed within the statutory period of limitation applicable to his legal right, or before adverse possession has barred his title to the property injured*" (*Galway v Metropolitan El. Ry. Co.*, 128 NY at 144 [emphasis added]).

While the issues in *Galway* did not implicate Real Property Law § 261, inasmuch as *Galway* did not involve the attachment of wires or cables to privately owned property by a telecom-

munication company, and the decision in *Galway* antedated the adoption of that statute in any event, *Galway* clearly distinguished between the statutory period within which an owner must assert a cause of action against another for unlawful use of property, and the time period required for a non-owner to assert rights over an owner's property. Further, the plaintiffs cite no case law to support their view that the "no lapse of time" provision of Real Property Law § 261 applies both to the statute of limitations and to the time period for a non-owner to acquire an interest in another's property, either by adverse possession or by prescriptive easement. Hence, Real Property Law § 261 did not grant the plaintiffs an open-ended time period within which to assert their claim of inverse condemnation.

Our more limited view of Real Property Law § 261 is not inconsistent with the Court of Appeals' decision in *Loretto* (53 NY2d at 154, *revd on other grounds* 458 US 419 [1982] [addressing Executive Law former § 828]). There, the Court of Appeals noted that telephone and telegraph companies were authorized to:

> "construct and maintain its necessary stations, plants, equipment or lines upon, through or over any other land [pursuant to Transportation Corporations Law § 27], subject to the right of the owners thereof to full compensation for the same and the *owners' rights* to compensation are *further protected by sections 261 and 335-a* of the Real Property Law" (*Loretto v Teleprompter Manhattan CATV Corp.*, 53 NY2d at 154 [emphasis added; citations and internal quotation marks omitted]).

Contrary to the plaintiffs' contention, the cited language from *Loretto* merely highlights that an owner has the right to compensation against a telecommunication company such as Verizon for a de facto taking, but does not conflict with our holding with regard to Real Property Law § 261.

Moreover, with respect to Verizon's alleged conduct in attaching additional cables to the plaintiffs' building in 2004 or 2005, even if we afford the pleadings a liberal construction (*see Kempf v Magida*, 37 AD3d 763, 764 [2007]), the plaintiffs failed to allege that said conduct constituted another de facto taking so as to trigger a limitations period for a claim of inverse condemnation. In any event, as Verizon correctly contends, viewing the allegations in the light most favorable to the plaintiffs, the initial attachment of the terminal and wiring was a discrete, well-

defined taking of property, and the mere addition of cable did not afford the plaintiffs a new limitations period (see *Carr v Town of Fleming*, 122 AD2d 540, 541 [1986] [de facto taking claim would have accrued when the condemnor physically entered upon the land and installed the subject sewer line]).

It should be noted that our interpretation of Real Property Law § 261 does not leave the plaintiffs without a remedy for Verizon's alleged intrusion upon their property. As discussed below, the plaintiffs may still pursue their causes of actions to recover damages for unjust enrichment, trespass, and violations of the General Business Law. We note that our initial discussion regarding whether the plaintiffs stated a cause of action to recover damages for inverse condemnation is necessary notwithstanding our holding that said cause of action is time-barred, inasmuch as those two issues are inextricably linked.

Accordingly, the Supreme Court should have granted that branch of the defendants' motion which was pursuant to CPLR 3211 (a) (5) to dismiss the first cause of action alleging inverse condemnation on the ground that it was barred by the statute of limitations.

## II. General Business Law § 349

### A. Failure to State a Cause of Action

"In order to establish a prima facie violation of General Business Law § 349, a plaintiff must demonstrate that a defendant is engaging in consumer-oriented conduct which is deceptive or misleading in a material way, and that the plaintiff has been injured because of it" (*Ladino v Bank of Am.*, 52 AD3d 571, 574 [2008]; see *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 25 [1995]). Consumer-oriented conduct does not require a plaintiff to show that the defendant repeatedly committed the acts complained of. Instead, a plaintiff must demonstrate only that the acts or practices have a broader impact on consumers at large, in the sense that they are directed to consumers or potentially affect similarly situated consumers (see *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d at 25; *Flax v Lincoln Natl. Life Ins. Co.*, 54 AD3d 992 [2008]; *Cruz v NYNEX Info. Resources*, 263 AD2d 285, 290 [2000]). The allegedly deceptive acts, whether misrepresentations or omissions, are governed by an objective standard: whether they were likely to mislead a reasonable consumer acting reasonably under the circumstances (see *Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 324 [2002]; *Os-*

*wego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d at 26; *Andre Strishak & Assoc. v Hewlett Packard Co.*, 300 AD2d 608, 609 [2002]).

The alleged deceptive practices committed by Verizon here consist of an omission and a misrepresentation; the former is based on Verizon's purported failure to inform the plaintiffs that they were entitled to compensation for the taking of a portion of their property, while the latter is based on Verizon's purported misrepresentation to the plaintiffs that they were obligated to accede to its request to attach its equipment to their building, without any compensation, as a condition to the provision of service.

The plaintiffs, by alleging that Verizon engaged in such conduct, stated a claim to recover damages for deceptive practices under General Business Law § 349. The purpose of General Business Law § 349 is to secure an " 'honest market place where trust prevails . . . against any and all deceptive and fraudulent practices' " (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, N.A.*, 85 NY2d at 25, quoting Governor's Mem approving L 1970, ch 43, 1970 NY Legis Ann, at 472). Verizon is granted the power, under Transportation Corporations Law § 27, to erect, construct, and maintain its equipment on private property. However, this power is "subject to the right of the owners" to full compensation, a right which cannot be waived without the owners' consent (*see* 1912 Ops Atty Gen 61, 63). Moreover, Verizon bears the burden of informing owners that they are entitled to full compensation because Transportation Corporations Law § 27 also contemplates the possibility of an agreement between Verizon and the owners without resorting to eminent domain. Such an agreement could not be reached, however, without notifying the landowners of their right to full compensation (*id.*; *see* Transportation Corporations Law § 27).

Contrary to Verizon's contention, the plaintiffs themselves need not be consumers (*see Securitron Magnalock Corp. v Schnabolk*, 65 F3d 256, 264 [1995], *cert denied* 516 US 1114 [1996] [noting that, for purposes of General Business Law § 349 (h), "(t)he critical question . . . is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor"]; *New York v Feldman*, 210 F Supp 2d 294, 301 [2002]; *Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.*, 3 NY3d 200, 207 [2004] [noting that the scope of General Business Law § 349 (h) is not limited solely

to consumers, but includes any person injured by reason of any violation]). The question is whether the conduct is consumer-oriented. Certainly, the plaintiffs demonstrated as much by their submission of Walsh's affidavit, wherein he described Verizon's so-called "attach and run" policy, involving the attachment of Verizon's equipment to a building without any attempt to seek or secure the owner's consent. Given the sheer volume of Verizon customers, there may be, as the Supreme Court concluded, thousands of similarly situated consumers. Indeed, the plaintiffs provided photographs documenting other terminal boxes attached to buildings throughout the city.[3]

Finally, as a result of Verizon's conduct, the plaintiffs suffered an injury; they were forced to forgo the possession, use, and enjoyment of a portion of their property without any compensation.

Accordingly, the plaintiffs stated a cause of action for relief under General Business Law § 349 (h).

## B. Statute of Limitations

As the parties acknowledged at oral argument, the Supreme Court's refusal to dismiss the plaintiff's General Business Law § 349 cause of action was, in effect, a denial of that branch of Verizon's motion which to dismiss that cause of action on the ground that the statute of limitations had expired. Therefore, we decide this issue on appeal.

New York courts have long had the power, both at law and equity, to preclude a defendant from using the statute of limitations as a defense " 'where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding' " (*Putter v North Shore Univ. Hosp.*, 7 NY3d 548, 552 [2006], quoting *Zumpano v Quinn*, 6 NY3d 666, 673 [2006], quoting *General Stencils v Chiappa*, 18 NY2d 125, 128 [1966]). A "defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action" (*Simcuski v Saeli*, 44 NY2d 442, 448-449 [1978]). Courts may also look to whether "the defendant engaged in conduct which was calculated to mislead . . . plaintiff, and that the plaintiff, in reliance thereon, failed to timely commence the action" (*Kiernan v Long*

---

**3.** Whether these terminals service other buildings, which would require Verizon to obtain either the owner's permission or to compensate the owner, remains to be seen.

*Is. R.R.*, 209 AD2d 588, 589 [1994] [internal quotation marks omitted]). When considering a motion to dismiss, the "court may estop a defendant from asserting [the statute of limitations] when the defendant has by its conduct induced a party to postpone bringing suit on a known cause of action" (*id.* at 588-589). Since Verizon's alleged conduct constitutes a course of deceptive practices, the Supreme Court properly denied that branch of Verizon's motion which was, in effect, to dismiss, as time-barred, the cause of action based on General Business Law § 349.

### III. Injunctive Relief

■ Verizon contends that the Supreme Court should have dismissed the separate cause of action for injunctive relief. Although it is permissible to plead a cause of action for a permanent injunction (*see Elow v Svenningsen*, 58 AD3d 674, 675 [2009]), permanent injunctive relief is, at its core, a remedy that is dependent on the merits of the substantive claims asserted by a plaintiff. Here, the cause of action for injunctive relief is dependent on the General Business Law § 349 (h) cause of action. Since a cause of action has been stated under that theory, the Supreme Court correctly declined to dismiss the cause of action for injunctive relief, correctly noting that "[i]t may be that the claim for injunctive relief is subsumed in other causes of action, but such determination need not be made at this point." (2008 NY Slip Op 52081[U], *10.)

### IV. Findings of Fact/Rulings on the Merits

■ Verizon argues that this Court should vacate the Supreme Court's order to the extent that the Supreme Court purportedly made findings of fact and rulings on the merits. Verizon's contention is without merit. The order appealed from determined a motion to dismiss an amended complaint, and the facts as alleged in the amended complaint must be treated as if true (*see e.g. Leon v Martinez*, 84 NY2d at 87). Hence, Verizon has no reason to complain that the "[o]rder's background section are [*sic*] simply condensed versions of plaintiffs' allegations."

Similarly, the Supreme Court did not rule on the merits of the case. The Supreme Court did not grant any relief to the plaintiffs, and merely denied those branches of the defendants' motion which were to dismiss certain portions of a pleading. Verizon will have an opportunity to present its case after joinder of issue and the completion of discovery.

## V. Oral License

On their cross appeal, the plaintiffs contend that the Supreme Court, while not finding that they granted Verizon an oral license to attach a rear-wall terminal, may have suggested that they had the legal power and capacity to grant such an oral license. Verizon responds that the Supreme Court correctly ruled that proof of an oral license would defeat the plaintiffs' inverse condemnation claim.

■ The cross appeal from so much of the order as denied that branch of Verizon's motion which was to dismiss the first cause of action, sounding in inverse condemnation, must be dismissed, as the plaintiffs are not aggrieved by that provision of the order (*see* CPLR 5511), despite the inclusion of dicta in the order concerning whether the plaintiffs had the legal power and capacity to grant an oral license to Verizon, whether they may have granted an oral license to Verizon, and the legal consequences of such a grant (*see Parochial Bus Sys. v Board of Educ. of City of N.Y.*, 60 NY2d 539, 544-545 [1983]). "Merely because the order appealed from contains language or reasoning that a party deems adverse to its interests does not furnish a basis for standing to take an appeal" (*Cholowsky v Civiletti*, 69 AD3d 110, 116 [2009], quoting *Castaldi v 39 Winfield Assoc., LLC*, 22 AD3d 780, 781 [2005]; *see also Caffrey v Morse Diesel Intl.*, 279 AD2d 494 [2001] [where an order denied the defendant's motion for summary judgment, the plaintiffs were not aggrieved by it, even though they disagreed with the findings of the Supreme Court]).

## VI. Unjust Enrichment

■ The plaintiffs contend on their cross appeal that the Supreme Court erred in dismissing the third cause of action alleging unjust enrichment. Verizon responds that the unjust enrichment cause of action was correctly dismissed as duplicative of the trespass cause of action, as both causes of action are based on the same facts and seek the same damages. We reject Verizon's contention.

" '[A] quasi-contractual obligation is one imposed by law *where there has been no agreement or expression of assent, by word or act, on the part of either party involved.* The law creates it, regardless of the intention of the parties, to assure a just and equitable result' " (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388-389 [1987], quoting *Bradkin v Leverton*, 26 NY2d 192, 196 [1970]). "The theory of unjust enrichment lies as a quasi-contract claim" (*Goldman v Metropolitan Life Ins.*

*Co.*, 5 NY3d 561, 572 [2005]). "To prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit the [other party] to retain what is sought to be recovered' " (*Citibank, N.A. v Walker*, 12 AD3d 480, 481 [2004], quoting *Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415, 421 [1972], *cert denied* 414 US 829 [1973]; *see Anesthesia Assoc. of Mount Kisco, LLP v Northern Westchester Hosp. Ctr.*, 59 AD3d 473, 481 [2009]). A trespass, in contrast, is an intentional physical entry onto the property of another without justification or permission (*see Woodhull v Town of Riverhead*, 46 AD3d at 804; *Long Is. Gynecological Servs. v Murphy*, 298 AD2d at 504).

A cause of action is duplicative of another when they both arise out of the same facts and allege the same damages (*see Town of Wallkill v Rosenstein*, 40 AD3d 972, 974 [2007]; *InKine Pharm. Co. v Coleman*, 305 AD2d 151, 152 [2003]; *Daniels v Lebit*, 299 AD2d 310 [2002]). Here, the amended complaint states a cause of action to recover damages for unjust enrichment. The plaintiffs alleged that Verizon attached a rear-wall terminal and associated wiring to their building, which Verizon used to service neighboring buildings to the detriment of the plaintiffs who, as a result, were deprived of the possession, use, and enjoyment of a portion of their property.

Contrary to the Supreme Court's determination, the unjust enrichment cause of action is not duplicative of the trespass cause of action. Both the unjust enrichment and trespass causes of action seek the same damages, to wit: restitution for benefits received (*see Granchelli v Johnson Bldg. Co.*, 85 AD2d 891 [1981] [noting that, in an appropriate trespass claim, the plaintiff is entitled to damages based upon duty of restitution for benefits received]; *Rand v City of New York*, 47 AD2d 937 [1975] [plaintiff sought restitution as part of trespass cause of action]; *West St. Auto Serv. v Schmidt*, 26 AD2d 662 [1966]). However, the key difference between the two is that the trespass cause of action is based on an unjustified entry onto the property, whereas the unjust enrichment cause of action can be based on either a justified or unjustified entry. The unjust enrichment cause of action is only duplicative of the trespass cause of action to the extent that it is based on an unjustified entry. If, however, the unjust enrichment cause of action is based on Verizon having justifiably entered the property pursuant to Transportation Corporations Law § 27, then it is not duplicative of the trespass

cause of action. On the one hand, the trier of fact could find that Verizon justifiably entered the property, which would result in the dismissal of the trespass cause of action. But Verizon should not, at the plaintiffs' expense, benefit from its use of the property without having compensated them, thus entitling the plaintiffs to relief under the unjust enrichment cause of action. On the other hand, the trier of fact could find that Verizon was unjustified in entering the property, at which point the plaintiffs would have to choose a theory of recovery: unjust enrichment or trespass (see Honzawa v Honzawa, 309 AD2d 629, 630 [2003], cert denied 541 US 1064 [2004] [noting that while two causes of action, alleging malicious prosecution and abuse of process, could be pleaded in the alternative, only a single recovery was available]). Stated differently, the plaintiffs have proposed alternative theories of recovery based on different sets of facts, dependent on whether the entry is deemed justified or unjustified. Whether the unjust enrichment cause of action is duplicative of the trespass cause of action must therefore await a determination by the trier of fact.

Accordingly, the cross appeal from so much of the order as denied that branch of the defendants' motion which was to dismiss the first cause of action is dismissed. The order is modified, on the law, (1) by deleting the provision thereof denying that branch of the defendants' motion which was pursuant to CPLR 3211 (a) (5) to dismiss the first cause of action alleging inverse condemnation and substituting therefor a provision granting that branch of the motion, and (2) by deleting the provision thereof granting that branch of the defendants' motion which was pursuant to CPLR 3211 (a) to dismiss the third cause of action alleging unjust enrichment and substituting therefor a provision denying that branch of the motion, and, as so modified, the order is affirmed insofar as appealed from and insofar as reviewed on the cross appeal.

MASTRO, J.P., BELEN and LOTT, JJ., concur.

Ordered that the cross appeal from so much of the order as denied that branch of the defendants' motion which was pursuant to CPLR 3211 (a) to dismiss the first cause of action is dismissed, as the plaintiffs are not aggrieved by that portion of the order (see CPLR 5511); and it is further,

Ordered that the order is modified, on the law, (1) by deleting the provision thereof denying that branch of the defendants' motion which was pursuant to CPLR 3211 (a) (5) to dismiss the first cause of action alleging inverse condemnation and

substituting therefor a provision granting that branch of the motion, and (2) deleting the provision thereof granting that branch of the defendants' motion which was pursuant to CPLR 3211 (a) to dismiss the third cause of action alleging unjust enrichment and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed from and insofar as reviewed on the cross appeal; and it is further,

Ordered that one bill of costs is awarded to the plaintiffs.