OPINION OF THE COURT
Saxe, J.P.
This appeal concerns the parameters for allowing a shareholder of a cooperative corporation to name as defendants, in an action against the corporation, individual members of the corporation’s board of directors.
On September 27, 2005, plaintiffs Robert and Champa Weinreb purchased the penthouse apartment in the residential cooperative at 37 Riverside Drive, in Manhattan. They claim that although defendants were aware that the apartment required major renovations to make it habitable, and had assured plaintiffs before the purchase that their renovation plans would be given prompt consideration, defendants have unreasonably withheld their approval for plaintiffs’ planned renovations of the apartment, in violation of the provision of the proprietary lease stating that the consent of the lessor “shall not be unreasonably withheld.” According to plaintiffs, in October 2005, they and the board agreed that plaintiffs would first submit a general alteration plan to the board, then seek approval from the Landmarks Preservation Commission (LPC), and thereafter submit a detailed plan to the board for its approval. In preparation for the submission to the LPC, plaintiffs retained an architect, a structural engineer, and a mechanical engineer. In July 2006, the Community Board 7 Preservation Committee approved the plan, and in September 2006, the full board of Community Board 7 approved it.
*56 According to plaintiffs, defendant Nellie Caruso, the board’s president, refused to sign their application to the LPC for nearly seven months, without providing any reason. In February 2007, the LPC approved the plan.
In April 2007, plaintiffs submitted the detailed plans for the renovations to the board. In June 2007, according to plaintiffs, the cooperative advised them that it would not approve the plan because it needed to retain its own experts to assess the plan’s structural integrity, at plaintiffs’ expense. Although the board retained such experts, plaintiffs allege that it “substantially delayed” the review process by withholding information from those experts, and then requiring, on three separate occasions, that additional experts be retained. Plaintiffs also claim that the experts required multiple additional submissions of information from plaintiffs such that the board did not vote on the alteration plans until June 6, 2008. Apparently, because of that delay, the LPC had to reapprove the plans and assign a new examiner, and according to plaintiffs, the board refused to sign the reapplication.
In August 2008, the board rejected plaintiffs’ plans, asserting safety reasons. By January 15, 2009, the board’s experts approved the safety and mechanical plans, but one week later, the board allegedly “raised four completely new issues with the mechanical plans.” In February 2009, the board “listed fourteen new issues with [the] renovation plans,” and plaintiffs claim that, by April 2009, the board’s architect was satisfied with the manner in which those problems were addressed, but the board required plaintiffs to pay a construction consultant to assess the issues. In September 2009, this consultant furnished the board with a report of his assessment, and by letter dated September 25, 2009, notified plaintiffs of the risks that needed to be addressed, and asked plaintiffs for the pertinent plans.
By e-mail dated February 25, 2010, the board notified plaintiffs that it would not approve the plans, and cited multiple reasons for not doing so; plaintiffs responded, asking for the reports upon which the board’s decision was based. The board also notified plaintiffs that if any building occupant “experience [s] undue inconvenience as a result of [the] renovation,” plaintiffs would be responsible for temporary housing costs “not to exceed $1,000 per night.”
In July 2010, plaintiffs submitted revised plans to the board, followed by submission of revised plans in September 2010, followed by a letter in support from plaintiffs’ structural engineer. On November 8, 2010, the board, again, rejected the plans.
*57 In March 2011, plaintiffs commenced this action alleging four causes of action: (1) breach of proprietary lease as against the cooperative; (2) attorneys’ fees under Real Property Law § 234; (3) breach of fiduciary duty by the cooperative as well as four of the nine board members: Nellie Caruso, Claudia Green, Philip Milldrum, and Jonathan Morris (individual defendants); and (4) a permanent injunction requiring the cooperative and the board to approve the alterations and sign such documents as required to effectuate the same, and prohibiting all defendants from interfering with the alterations. Plaintiffs allege that the cooperative, the board and its members have unreasonably withheld consent to alterations of the subject cooperative apartment.
There is no challenge to the propriety of the claim against the cooperative corporation based on its allegedly unreasonable withholding of consent. The only challenge was by the individual defendants, who moved, pre-answer, to dismiss the only claims seeking relief against them, the third and fourth causes of action, pursuant to CPLR 3211 (a) (1) and (7) and 3016 (b). Supreme Court granted the motion to the extent of dismissing the breach of fiduciary duty claim as against them, but denied the motion insofar as it pertained to the fourth cause of action, for an injunction. The individual defendants now appeal from the denial of their motion to dismiss, as against them, the fourth cause of action for a permanent injunction.
We reverse and dismiss the claim for injunctive relief as against the individual defendants.
As a general matter, courts are prohibited from inquiring into the propriety of actions taken by a director on behalf of the corporation (see Matter of Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d 530, 537-538 [1990]); “[t]he business judgment rule protects individual board members from being held liable for decisions . . . that were within the scope of their authority” (Berenger v 261 W. LLC, 93 AD3d 175, 184 [2012]). Of course, individual board members may be validly sued for breach of fiduciary duty if the complaint pleads independent tortious acts on the part of those individual directors (see id.; Kleinerman v 245 E. 87 Tenants Corp., 74 AD3d 448, 449 [2010]). But, here, the breach of fiduciary duty claim against the individual board members has been dismissed, and that ruling is not challenged on appeal. Therefore, the Levandusky rule precludes claims against the individual directors.
In allowing the claim for injunctive relief to proceed against individual members of the board, the motion court relied on *58 King v 870 Riverside Dr. Hous. Dev. Fund Corp. (74 AD3d 494, 495 [2010]). In King, a shareholder sued the cooperative corporation, its board of directors and named individual directors, for their failure to consent to the transfer of her father’s cooperative shares after his death. The proprietary lease there provided that a transfer of shares could not take effect until authorized by the directors, but specified that in the event of the death of a lessee shareholder, such consent could not be unreasonably withheld (id.). This Court allowed the plaintiffs claim for injunctive relief to proceed against all the defendants, including the individual directors, with a brief reference to the allegations that “the board and its members, acting inexplicably and without any stated reason, withheld their consent and refused to execute the documents necessary to complete the transfer and assignment,” and the conclusion that the “cause of action, which seeks to compel the board and its individual members to execute the necessary documents, thus states a valid cause of action” (id.).
We conclude that reliance on King was unwarranted, for the following reasons.
One important distinction between the present case and the facts of King is that the language of the proprietary lease at issue in King required authorization by “the directors” (74 AD3d at 495); therefore, permitting a claim for a mandatory injunction to proceed against the directors there at least arguably allowed the court to issue the sought directive against the appropriate responsible parties. In contrast, here, the written consent required by the proprietary lease is that of “the Lessor,” namely, the cooperative corporation. There is no logic in keeping individual directors in the case, where only the cooperative corporation may be directed to sign the consent.
In any event, including individual board members as defendants, where they are not accused of tortious conduct, cannot be justified based merely on the assumption that they may be required to sign a consent on behalf of the corporation. An injunction against a corporation “is enforceable against not only th[at] corporation . . . but also the persons who act for it in the transaction of its business, that is, corporate officers and agents with knowledge of the injunction” (67A NY Jur 2d, Injunctions § 212). Indeed, the individuals named as defendants may not even remain in their positions by the time the sought relief is awarded.
Moreover, injunctive relief is simply not available when the plaintiff does not have any remaining substantive cause of ac-
*59 tion against those defendants. An injunction is a remedy, a form of relief that may be granted against a defendant when its proponent establishes the merits of its substantive cause of action against that defendant. “Although it is permissible to plead a cause of action for a permanent injunction, . . . permanent injunctive relief is, at its core, a remedy that is dependent on the merits of the substantive claims asserted” (Corsello v Verizon N.Y., Inc., 77 AD3d 344, 368 [2010], mod on other grounds 18 NY3d 777 [2012]). Here, there is no remaining substantive claim interposed against the individual defendants, since the breach of fiduciary duty claim against them has been dismissed, and that ruling is not challenged on appeal. Consequently, nothing in the complaint as it now stands entitles plaintiffs to any injunctive relief — neither a direction that these defendants sign off on the proposed renovation work, nor a prohibition against interference with the contemplated work after consent is obtained, which form of injunction in any event finds no support in the complaint.
Unlike the present case, in King, although the motion court dismissed the plaintiff’s claim of tortious conduct against the individual board members, that dismissal was subject to a grant of leave to seek to replead it (2009 NY Slip Op 32049[U], *8-9 [2009]), and that portion of the ruling was not challenged on appeal. In view of the possibility in King that a claim against the individual directors could successfully be pleaded, which in turn could warrant the issuance of injunctive relief against them, dismissal of the claim for injunctive relief against the individual defendants arguably would have been premature. Here, no such possibility exists. Therefore, the ruling in King permitting the plaintiff to proceed with a claim for injunctive relief against individual board members is inapplicable here, and the settled law that applies in the absence of any pleaded tortious conduct on the part of the individual directors precludes their inclusion as named defendants in this case.
Accordingly, the order of the Supreme Court, New York County (Carol R. Edmead, J.), entered August 10, 2011, which, insofar as appealed from, denied the individual defendants’ motion to dismiss, as against them, the fourth cause of action, for a permanent injunction, should be reversed, on the law, the motion granted, and the action dismissed as against the individual defendants. The Clerk is directed to enter judgment accordingly.
Order, Supreme Court, New York County, entered August 10, 2011, reversed, on the law, the motion granted and the action *60 dismissed as against defendants Nellie Caruso, Claudia Green, Philip Milldrum and Jonathan Morris. The Clerk is directed to enter judgment accordingly.
Sweeny, Renwick, DeGrasse and Richter, JJ., concur.