DONALD TUFFLEY, Respondent, v CITY OF SYRACUSE, Appellant.

Fourth Department, July 9, 1981

APPEARANCES OF COUNSEL

*David M. Garber, Corporation Counsel (James L. Gelormini* of counsel), for appellant.

*Lombardi, Devorsetz, Stinziano & Smith (Sidney Devorsetz* of counsel), for respondent.

OPINION OF THE COURT

SCHNEPP, J.

This action for damages arose when an underground culvert caved in under the foundation of a building which was being constructed by plaintiff on his property in the City of Syracuse. Plaintiff claims that the city is responsible for the value of the work done on the foundation because its agents and employees failed to disclose the culvert's existence.

The culvert* which runs under the center of plaintiff's property was tapped into by the city in 1903 when it was constructing a sewer and drain system and was used as an overflow storm drain. On April 17, 1974 the city issued a permit to plaintiff to excavate and install the building foundation. Acting on belief that the construction was possibly over a city sewer, the city's chief engineer inspected the property and issued a stop-work order on May 1, 1974. Later that day when the engineer learned that the city

---

* Maps made prior to 1886 show that a stream traversed the property and flowed through a culvert under the Erie Canal and eventually drained into Onondaga Lake. About 1840 the stream was enclosed in a culvert made of wood and fieldstone and the land filled until the culvert was between 12 and 25 feet underground. Eventually the Erie Canal bed was also leveled and paved.

had no recorded easement for the culvert, he erroneously concluded that it was not a part of the city's sewer system and canceled the stop-work order. Sewer and drainage maps of the entire city, which were prepared by the city sewer department and deposited in the offices of the city engineer, indicate that the culvert is part of the city's drainage system. A sanitary sewer system crossing plaintiff's property is shown on the same map. Plaintiff resumed construction and the cave-in later occurred when the foundation was poured. Plaintiff testified that he believed that the city officials were concerned about the integrity of the sanitary sewer on the east side of his property; that he was never informed of the existence of the second sewer line; and that he did not know that his building was over a deteriorating culvert which traversed his property directly under the building site.

Plaintiff asserted causes of action for trespass and negligence by the city in the issuance of the building permit and in failing to warn plaintiff about the existence of the underground culvert. The city counterclaimed for damages for the repair of the culvert.

The trial court found that the city had no legal right in the culvert which was part of its over-all drainage system and that city officials did not advise plaintiff of the culvert's existence, of which plaintiff first became aware when it collapsed on July 3, 1974. The court declined to resolve the trespass issue concluding that while a technical trespass might have occurred the damages for use of the culvert would not include damages resulting from the cave-in. The court also found that as a matter of law the granting of the building permit was an exercise of sovereign power for which the city could not be cast in liability. The court concluded, however, that the city "voluntarily assumed a duty to pursue the question of the existence of such a culvert in a thorough manner" when it issued the stop-work order; that the city breached its duty when it failed to consult its own sewer and drainage maps or to inform plaintiff that the culvert existed; and that plaintiff justifiably relied on the cancellation of the stop-work order. The court granted judgment for the plaintiff for damages which occurred

after the date of the stop-work order. The court also found for the city on its counterclaim and awarded it damages in the amount of $7,000. The court, however, also found that the continued use by the city of the culvert should be compensable and offset this damage award on the city's counterclaim under the theory that the city's *de facto* taking of the property justified application of the inverse condemnation doctrine and that plaintiff would be entitled to recover the sum of $7,000 from the city in exchange for the grant of a permanent easement by plaintiff to the city covering the "outfall sewer line as depicted on [the city] maps" (overflow storm drain across his property).

█ Initially we consider the city's claim that the trial court erred in awarding damages on facts and theories of recovery not pleaded by plaintiff. This claim is without merit. Failure to state precisely in pleadings the appropriate legal theory upon which relief may be granted is not fatal if the essential facts are set forth which merit recovery based on a different theory. A complaint is deemed to allege whatever can be implied from its statements by fair and reasonable intendment *(Wernham v Moore,* 77 AD2d 262; *Foley v D'Agostino,* 21 AD2d 60). Pleadings should be liberally construed and defects ignored if no prejudice results therefrom (CPLR 3026). Where a defendant should have been prepared for trial and suffers no surprise on the basis of the pleadings, motions to conform pleadings to the proof should be granted (CPLR 3025, subd [c]; Siegel, New York Practice, § 404, p 532). Moreover, a court will look to the bill of particulars when determining the sufficiency of a complaint. In his complaint, bill of particulars and supplemental bill of particulars, plaintiff alleged a cause of action based on negligence and a breach of the duty to warn of the culvert's existence, and set forth facts upon which recovery could appropriately be granted. Plaintiff alleged that the city owned, operated and controlled a public sewer line which passed beneath his property; that the city reissued the building permit (canceled stop-work order) and at no time warned him of the culvert's existence although the city's records contained the information concerning it; and that he relied upon the city's assertions to his detriment. Accordingly, there is no

basis for the city's claim that it did not have fair notice of this cause of action. Since the city suffered no prejudice, any technical defects in the complaints were properly ignored (CPLR 3026) and plaintiff's motion to conform the pleadings to the proof should have been granted (CPLR 3025, subd [c]; *Antonetti v City of Syracuse*, 52 AD2d 742).

■■ We now reach the determinative issue of this case and hold that, contrary to the claim of the city, the trial court did not err in using the voluntary assumption of duty rule to fix liability on the city. As a general rule no liability attaches for failure to use due care in carrying out general governmental functions such as police or fire protection or the issuance of building permits because the duty of due care is owed to the general public and not to any specific individual *(Riss v City of New York*, 22 NY2d 579; *Motyka v City of Amsterdam*, 15 NY2d 134; *Rottkamp v Young*, 21 AD2d 373, affd 15 NY2d 831). A duty to exercise due care in a particular situation may arise, however, if circumstances point to the existence of a special relationship between the individual and a municipality *(Dutton v City of Olean*, 60 AD2d 335, affd 47 NY2d 756). A special relationship may exist because of affirmative conduct "which the municipality is not required to take, but which it voluntarily undertakes to perform and in so doing induces the plaintiff to rely on the municipality's duty to exercise reasonable care in its performance" *(Gordon v Holt*, 65 AD2d 344, 350-351).

■ Such a special relationship ensued between the parties at the time the city ordered the plaintiff to cease work on the foundation when it came to the city's engineer's attention that the construction might be over a city sewer. Plaintiff's excavation permit was temporarily revoked for the city's avowed purpose of determining whether the building interfered with a city sewer. The city engineer inspected the site and determined that there was, in fact, a culvert underneath the work site. In the absence of a recorded easement, however, he erroneously concluded that the culvert was not a part of the city sewer system and that plaintiff was not building over a city sewer. Moreover, the city

engineer failed to inspect city sewer maps which were housed in his own offices and which would have revealed the location of this culvert and its use as part of the city's system for storm water runoff. Although plaintiff was advised that city officials were concerned about a sewer, no information was ever relayed to him that a culvert was in fact located directly under the work site. He justifiably assumed that the city's concern was related to the sanitary sewer under the east side of his property and that he was not building over a city sewer. It was after this that the stop-work order was canceled and plaintiff resumed work on the foundation. Reasonable care on the part of the city would include a careful and prudent examination of its records and a divulgence to plaintiff of the results of its investigation before permitting plaintiff to proceed at his peril with the construction work. The city at the very least assumed the duty to notify or warn plaintiff that a culvert existed so that he might determine for himself whether there was a potential problem. The city by its conduct breached its duty and misled plaintiff by its silence into believing that the only sewer under his property was a sanitary sewer which was well away from the actual building site. The record establishes that the trial court properly found that the city assumed a duty to plaintiff which it subsequently breached and the further finding that "[c]ertainly the recipient of a municipal building permit who is required to stop work because of a suspected problem is entitled to assume that that problem does not exist when he is allowed to proceed". The city's cancellation of the stop-work order which reactivated the excavation permit impliedly assured plaintiff that no culvert, regardless of ownership, existed on the building site and thereby induced plaintiff to proceed with the construction of his building foundation to his detriment.

The city also argues that the trial court rejected plaintiff's claim that the city had trespassed and that contrary to the proof awarded damages for inverse condemnation. We disagree. The trial court did not reject plaintiff's trespass argument, but properly concluded that he could not recover as consequential damages costs associated with the destruction of the foundation or delay as a result of the

city's use of the culvert. Use of private property, however, by a municipality in such a manner as to amount to a compensable taking is actionable, and a continuous, permanent trespass may constitute a *de facto* taking. The owner otherwise entitled to damages or injunctive relief may be relegated to a theory of inverse condemnation. Inverse condemnation, rather than trespass, is the appropriate theory for granting damages to an injured landowner where the trespasser is cloaked with the power of eminent domain *(Horton v Niagara, Lockport & Ontario Power Co.,* 231 App Div 386, 396-397; *Evans v City of Johnstown,* 96 Misc 2d 755, 759; see *Ferguson v Village of Hamburg,* 272 NY 234; *Mobil Oil Corp. v Long Is. Light. Co.,* 83 Misc 2d 249, affd 52 AD2d 873; 28 NY Jur, Injunctions, § 71, p 398). It was unnecessary for the trial court to utilize CPLR 103 to convert plaintiff's action in trespass into a claim for inverse condemnation. The only issue is whether the facts alleged in the pleadings could by any reasonable intendment embrace a cause of action for inverse condemnation. Since the essential facts are the same, the change of theory did not prejudice the city's defense and the trial court properly construed the pleadings to include a claim for inverse condemnation.

Finally the court's determination of damages is supported by the record, including the award for inverse condemnation which the city claims was without proper foundation and not supported by expert testimony. To the contrary, plaintiff's appraiser testified that the market value of the property decreased $7,000 as a result of the existence of the culvert.

The other issues raised by the city have been examined and found to be without merit.

Accordingly, the judgment of Trial Term should be affirmed.

CARDAMONE, J. P., CALLAHAN, DOERR and DENMAN, JJ., concur.

Order and judgment unanimously affirmed, with costs.