[967 NE2d 1177, 944 NYS2d 732]

WILLIAM CORSELLO et al., Respondents-Appellants, v VERIZON
NEW YORK, INC., Formerly Known as NEW YORK TELEPHONE
COMPANY, et al., Appellants-Respondents.

Argued February 14, 2012; decided March 29, 2012

**POINTS OF COUNSEL**

*Kirkland & Ellis LLP* (*Patrick F. Philbin* of the District of Columbia bar, admitted pro hac vice, of counsel) and *Kirkland & Ellis LLP*, New York City (*Joseph Serino, Jr.*, of counsel) for appellants-respondents. I. The court below erred in holding that the complaint states a claim for inverse condemnation. (*O'Brien v City of Syracuse*, 54 NY2d 353; *Smith v Town of Long Lake*, 40 AD3d 1381; *Feder v Village of Monroe*, 283 AD2d 548; *Bunke v New York Tel. Co.*, 110 App Div 241, 188 NY 600; *Antonopulos v Postal Tel. Cable Co.*, 261 App Div 564; *Powers v State Line Tel. Co.*, 116 App Div 737; *Little v American Tel. & Tel. Co.*, 96 App Div 559; *Curwin v Verizon Communications [LEC]*, 35 AD3d 645; *Cassata v New York New England Exch.*, 250 AD2d 491; *Tusa v Cablevision*, 262 AD2d 306.) II. The Appellate Division erred by failing to dismiss plaintiffs' General Business Law § 349 claim. (*Haberbush v Christensen*, 103 AD2d 996; *Sheehan v County of Suffolk*, 67 NY2d 52; *D & Z Holding Corp. v City of N.Y. Dept. of Fin.*, 179 AD2d 796; *Donnelly v Margolis*, 265 AD2d 523; *City of New Rochelle v Echo Bay Waterfront Corp.*, 268 App Div 182; *Sisters of St. Dominic v Orange & Rockland Power Co.*, 79 AD2d 1021; *Oswego Laborers' Local 214 Pension Fund v*

*Marine Midland Bank,* 85 NY2d 20; *Schneckloth v Bustamonte,* 412 US 218; *City of New York v Smokes-Spirits.Com, Inc.,* 12 NY3d 616; *Gaidon v Guardian Life Ins. Co. of Am.,* 96 NY2d 201.) III. The Appellate Division erred by failing to dismiss the unjust enrichment claim as duplicative of trespass. (*Town of Wallkill v Rosenstein,* 40 AD3d 972; *Feder v Village of Monroe,* 283 AD2d 548; *Brick v Cohn-Hall-Marx Co.,* 276 NY 259; *Amodeo v Kolodny, P.C.,* 35 AD3d 773; *Tenamee v Schmukler,* 438 F Supp 2d 438; *Granchelli v Johnson Bldg. Co.,* 85 AD2d 891; *Samiento v World Yacht Inc.,* 10 NY3d 70.)

*Law Offices of David M. Wise, P.A.,* Cranford, New Jersey (*David M. Wise* of counsel), and *Reilly Like & Tenety,* Babylon (*Irving Like* of counsel), for respondents-appellants. I. Verizon New York, Inc.'s arguments for dismissing plaintiffs' unjust enrichment, inverse condemnation and deceptive trade practices causes of action lack merit. (*Butler v Frontier Tel. Co.,* 186 NY 486; *Cornwell v Sanford,* 222 NY 248; *Deposit Guaranty Nat. Bank v Roper,* 445 US 326; *White v Mathews,* 559 F2d 852; *Weiss v Regal Collections,* 385 F3d 337; *Miller v Schloss,* 218 NY 400; *United States v Lynah,* 188 US 445; *United States v Great Falls Mfg. Co.,* 112 US 645; *Evans v City of Johnstown,* 96 Misc 2d 755, 97 AD2d 1; *New York State Energy Research & Dev. Auth. v Nuclear Fuel Servs., Inc.,* 561 F Supp 954.) II. The Appellate Division erred in holding plaintiffs' inverse condemnation cause of action barred by the statute of limitations. (*O'Meara v Postal Tel.-Cable Co.,* 279 NY 282; *Antonopulos v Postal Tel. Cable Co.,* 261 App Div 564, 287 NY 712; *Consumers Union of U.S., Inc. v State of New York,* 5 NY3d 327; *Nollan v California Coastal Comm'n,* 483 US 825; *United States v General Motors Corp.,* 323 US 373; *Loretto v Teleprompter Manhattan CATV Corp.,* 53 NY2d 124, 458 US 419.) III. The denial of class certification was erroneous and should be reversed. (*Bunke v New York Tel. Co.,* 110 App Div 241, 188 NY 600; *Curwin v Verizon Communications [LEC],* 35 AD3d 645; *Cassata v New York New England Exch.,* 250 AD2d 491; *Wash-o-Matic Laundry Co., Inc. v 621 Lefferts Ave. Corp.,* 191 Misc 884; *Clark v Strong,* 105 App Div 179; *Galway v Metropolitan El. Ry. Co.,* 128 NY 132; *Ferguson v Village of Hamburg,* 272 NY 234; *New York City v Pine,* 185 US 93; *H. Muehlstein & Co. v Airway Cleaners & Dyers,* 17 Misc 2d 941.)

### OPINION OF THE COURT

SMITH, J.

Defendant Verizon New York, Inc. (Verizon) attached a box to a building that plaintiffs own, and used the box to transmit

telephone communications to and from Verizon's customers in other buildings. Plaintiffs claim that Verizon took their property without paying them just compensation, and deceived them into believing that no compensation was owed.

We hold that plaintiffs have stated a valid "inverse condemnation" claim for just compensation, and that that claim is not time-barred. However, their claim for an alleged violation of General Business Law § 349 is barred by the statute of limitations, and their unjust enrichment claim is legally insufficient. We also hold that the courts below properly denied plaintiffs' motion for class certification.

## I

Plaintiffs own an apartment building in Brooklyn. Many years ago, Verizon's predecessor, the New York Telephone Company, attached to that building a "terminal box" or "rear wall terminal." According to plaintiffs' complaint, boxes of this kind serve to connect Verizon's "Block Cable"—a single cable serving a number of customers typically located within a single city block—to "Station Connection wires," which "radiate out" from the box to several buildings in which Verizon customers are found. The complaint alleges that such a box is typically fed by "one or more Block Cables" and is "the termination point of between 25 to 200 individual Station Connection wires." Thus the box on plaintiffs' building enables Verizon to furnish telephone service not just to that building, but to a number of others. Plaintiffs claim, in substance, that Verizon is using their building as a substitute for a telephone pole, without paying plaintiffs for the privilege.

Plaintiffs also claim that Verizon tricked them into tolerating the box on their property without seeking payment. The complaint asserts that Verizon "never disclosed" that plaintiffs had a right to compensation and "created the false impression" that Verizon had a right to attach the box "as a condition for providing service to the building." This allegation was made more specific in deposition testimony: plaintiff William Corsello said that a Verizon representative told him in 1986 that Verizon "had a right" to put the box on the wall.

Plaintiffs brought this lawsuit seeking damages and injunctive relief on behalf of themselves and all other building owners similarly situated. The complaint asserts that plaintiffs are entitled to relief on four theories: inverse condemnation; unjust

enrichment; trespass; and deceptive trade practices in violation of General Business Law § 349. Verizon moved to dismiss the complaint. Supreme Court dismissed the unjust enrichment claim, but upheld the claims for inverse condemnation, trespass and violation of the General Business Law (21 Misc 3d 1116[A], 2008 NY Slip Op 52081[U] [2008]). In a later order, Supreme Court denied plaintiffs' motion to certify the case as a class action (25 Misc 3d 1221[A], 2009 NY Slip Op 52232[U] [2009]).

Verizon did not pursue an appeal from so much of Supreme Court's first order as sustained plaintiffs' trespass claim; that claim remains pending in Supreme Court. As to the other asserted grounds for relief, the Appellate Division modified Supreme Court's first order, and affirmed it as modified. The Appellate Division agreed with Supreme Court that plaintiffs had stated a legally sufficient inverse condemnation claim, but dismissed that claim as barred by the statute of limitations. It reinstated the unjust enrichment claim, and affirmed so much of the order as upheld the General Business Law claim (*Corsello v Verizon N.Y., Inc.*, 77 AD3d 344 [2d Dept 2010]). In a separate decision on the same day, the Appellate Division affirmed Supreme Court's order denying class certification (*Corsello v Verizon N.Y., Inc.*, 76 AD3d 941 [2d Dept 2010]).

The Appellate Division granted leave to appeal from both of its orders. We now modify the order that addressed Verizon's motion to dismiss, reinstating the inverse condemnation claim but dismissing the other two claims that are before us. We affirm the order denying class certification.

## II

■ We agree with both of the courts below that plaintiffs' complaint states a valid inverse condemnation claim.

It is undisputed that, under Transportation Corporations Law § 27, Verizon has the power to take plaintiffs' property for the purpose of attaching its cables and wires. Section 27 says, in relevant part:

> "Any such corporation may erect, construct and maintain the necessary fixtures for its lines upon, over or under any of the public roads, streets and highways . . . , and may erect, construct and maintain its necessary stations, plants, equipment or lines upon, through or over any other land, subject to the right of the owners thereof to full

compensation for the same. If any such corporation can not agree with such owner or owners upon the compensation to be paid therefor, such compensation shall be ascertained in the manner provided in the eminent domain procedure law."

In their inverse condemnation claim, plaintiffs assert that Verizon has de facto exercised its section 27 power, and taken plaintiffs' property, by attaching its "equipment" and "lines" to their building. Plaintiffs sue for the "compensation" for this taking to which they say they are entitled under section 27 and the takings clauses of the State and Federal Constitutions. The courts below held this claim to be legally sufficient, relying on *Loretto v Teleprompter Manhattan CATV Corp.* (458 US 419 [1982]), in which the United States Supreme Court decided that the installation of cables on the roof of an apartment building by a cable television company acting pursuant to authority granted by a state statute was a taking in the constitutional sense.

Verizon argues that inverse condemnation is not an available remedy because plaintiffs have alleged at most a trespass, not a taking of their property. *Loretto* is distinguishable, Verizon argues, because the cable television company in *Loretto* not only had a statutory right to install its equipment, but had expressly invoked that right. According to Verizon, unless it has affirmatively chosen to take plaintiffs' property under section 27, or unless it has inflicted an injury on the property that "is incapable of actual, physical repair and, therefore, in its nature and of necessity permanent" (*Dietzel v City of New York*, 218 NY 270, 272 [1916]), it has committed no more than a trespass and cannot be sued for inverse condemnation. Verizon's argument rests on an outmoded understanding of the relationship between inverse condemnation and trespass.

"Inverse condemnation" is a term relatively new to the law of eminent domain. Originally, at least as used by New York courts, it described not an independent basis for a lawsuit, but an equitable remedy given in actions for trespass when the trespasser had, but had not exercised, the power to condemn the property in question. In *Pappenheim v Metropolitan El. Ry. Co.* (128 NY 436 [1891]), we considered a trespass action in which plaintiff sought an injunction and damages based on the operation of a railway in front of her property that interfered with her easement of light, air and access. Though the defendants were authorized to exercise the right of eminent domain and thus to

acquire the easement, they had not done so and had paid plaintiff no compensation. In such a case, we said, the owner was entitled to damages for trespass, but was not limited only to a monetary remedy:

> "[T]he owner may resort to equity for the purpose of enjoining the continuance of the trespass, and to thus prevent a multiplicity of actions at law to recover damages; and in such an action the court may determine the amount of damage which the owner would sustain if the trespass were permanently continued, and it may provide that, upon payment of that sum, the plaintiff shall give a deed or convey the right to the defendant, and it will refuse an injunction when the defendant is willing to pay upon the receipt of a conveyance. The court does not adjudge that the defendant *shall* pay such sum and that the plaintiff shall so convey. It provides that, if the conveyance is made and the money paid, no injunction shall issue. If defendant refuse to pay, the injunction issues." (*Id.* at 444.)

Thus under *Pappenheim* the trespasser could be given a choice: condemn and pay for the property, or accept an injunction against the trespass. We did not label this remedy as "inverse condemnation" in *Pappenheim*; we first used that term more than 40 years later, in *Ferguson v Village of Hamburg* (272 NY 234, 240 [1936]), where we said that the method approved in *Pappenheim* and similar cases "of expeditiously disposing of the entire matter in a court of equity" was "sometimes termed 'inverse condemnation.' " Over the next several decades, the term was occasionally used in the same sense (*see Trippe v Port of N.Y. Auth.*, 17 AD2d 472, 474 [2d Dept 1962], *revd on other grounds* 14 NY2d 119 [1964]; *Boomer v Atlantic Cement Co.*, 26 NY2d 219, 230 [1970, Jasen, J., dissenting]); it was also used during that time to refer to a remedy sought *by* a trespasser that sought to exercise its eminent domain power, rather than being compelled to vacate the property (*see Heyert v Orange & Rockland Utils.*, 24 AD2d 592 [2d Dept 1965], *affd* 17 NY2d 352 [1966]; *New York Tel. Co. v Town of N. Hempstead*, 41 NY2d 691, 696 [1977]). In all these cases, inverse condemnation was conceived of as a remedy available only by the choice of the condemnor, as an alternative to other relief.

In more recent times, however, inverse condemnation has acquired what is now its accepted meaning: it describes "the

manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted" (*United States v Clarke*, 445 US 253, 257 [1980]). A leading treatise explains:

> "State courts have defined 'inverse condemnation' . . . as a cause of action against a governmental defendant to recover the value of property that has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency" (3-8 Nichols, Eminent Domain § 8.01 [5] [b] [i] [3d ed rev 2011] [footnote omitted]).

In a modern inverse condemnation action, an owner whose property has been taken de facto may sue the entity that took it to obtain just compensation, and if the action is successful the defendant has no choice in the matter—the compensation must be paid. As the Appellate Division explained in *Tuffley v City of Syracuse* (82 AD2d 110, 116 [4th Dept 1981]):

> "Use of private property . . . by a municipality in such a manner as to amount to a compensable taking is actionable, and a continuous, permanent trespass may constitute a *de facto* taking. . . . Inverse condemnation, rather than trespass, is the appropriate theory for granting damages to an injured landowner where the trespasser is cloaked with the power of eminent domain." (Citations omitted.)

Verizon's argument here—that inverse condemnation is normally available only when an entity has chosen to exercise its eminent domain power—in effect invites us to reject the more modern understanding of inverse condemnation, and to return to the time when that term described an option that might be given to a trespasser, either to vacate the property or to condemn it. We reject the invitation. Such a limitation on the rights of property owners would be not only inconsistent with modern authorities, but also unfair. It would invite an entity having the power of eminent domain to occupy property without risking more than damages for a temporary trespass, and to decide at a later date whether to acquire the property or abandon it. We agree with the Appellate Division in *Tuffley* that a "continuous, permanent trespass" may be converted into a "*de facto* taking."

We do not, however, imply endorsement of *Tuffley*'s statement that inverse condemnation is "*the* appropriate remedy"

where the trespasser has eminent domain power; we do not suggest, in other words, that claims for trespass and ejectment may no longer be brought in such cases. Indeed, a trespass claim, not challenged on appeal, remains pending in this case. There is no need to decide now on which, if either, of their two alternative theories—trespass and inverse condemnation—plaintiffs may recover; that will depend on whether they ultimately prove a continuous and permanent, or merely a temporary, occupation of their property. Nor do we decide anything about a case in which the parties' arguments are reversed: We do not imply that an entity having—but not having expressly exercised—the power of eminent domain may be heard to claim, to its own advantage, that it has accomplished a de facto taking, and may not be sued for trespass or ejectment. It may well be, though we do not now decide, that there are some occupations of property that may be treated either as trespasses or takings, at the property owner's option. And, of course, nothing we say here prevents an entity that has eminent domain power from overtly exercising that power when it wants to remain in possession of property it has occupied.

We decide here only that the complaint in this action alleges facts from which a continuous and permanent occupation of plaintiffs' property—a de facto taking—could be found, and therefore states a legally sufficient claim for inverse condemnation.

### III

The Appellate Division held that actions in inverse condemnation are governed by a three-year statute of limitations that runs from the time of the taking (see CPLR 214 [4]). Plaintiffs do not challenge that holding, and we assume (without deciding) that it is correct. On that assumption, plaintiffs' inverse condemnation claim is time-barred unless it is saved by Real Property Law § 261. We conclude that section 261 does apply, and the claim is timely.

Real Property Law § 261 says:

"Whenever any wire or cable used for any telegraph, telephone, electric light or other electric purpose, or for the purpose of communication otherwise than by the aid of electricity, is or shall be attached to, or does or shall extend upon or over any building or

land, no lapse of time whatever shall raise a presumption of any grant of, or justify a prescription of any perpetual right to, such attachment or extension."

Verizon's argument, which the Appellate Division accepted, is that this statute does not apply to an action for inverse condemnation based on an alleged de facto taking of property. The words "presumption of . . . grant" and "prescription of . . . perpetual right" refer, Verizon says, to a claim by a telephone company that it has acquired title to property by adverse possession, or that its long use of property has given it a prescriptive easement. Since a de facto taking involves neither of these—indeed, it involves no claim by the telephone company of any property right—section 261, in Verizon's view, is irrelevant to the case.

Verizon's narrow reading of the statute would defeat its purpose. The thrust of the statute is that a company may not unlawfully attach its wires or cables to private property and then, by lapse of time, deprive the property owner of any remedy for the unlawful act. When section 261 was enacted in 1909, an owner would have been expected to seek relief in an action for trespass or ejectment, in which the company might plead adverse possession or prescriptive easement as a defense. Today, as we explained above, the same facts would permit the owner to bring an inverse condemnation action, to which the company may assert a statute of limitations defense—a defense based, like adverse possession and prescriptive easement, on lapse of time. The fact that applicable legal doctrines have changed, and that new claims and defenses, with different names, are now in use should not permit a lapse-of-time defense to succeed where the authors of section 261 clearly intended it to fail. Plaintiffs' inverse condemnation claim is not time-barred.

## IV

■ We conclude, however, that plaintiffs' claim under the General Business Law is barred by the statute of limitations.

General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," and allows any person injured by a violation of the section to recover damages (General Business Law § 349 [a], [h]). Plaintiffs claim that Verizon acted deceptively by attaching its box to their building without telling plaintiffs that that act entitled plaintiffs to compensation, and

by falsely telling plaintiffs that Verizon had a right to affix the box. We assume (without deciding) that these allegations state a legally sufficient claim under section 349.

That claim is subject to the three-year limitations period imposed by CPLR 214 (2), which applies to actions "to recover upon a liability . . . created or imposed by statute" (*Gaidon v Guardian Life Ins. Co. of Am.*, 96 NY2d 201, 208 [2001]). The complaint here alleges no successful deception of plaintiffs within three years of the time the action was brought, and thus Verizon's statute of limitations defense to the General Business Law claim is prima facie valid.

The Appellate Division, relying on *General Stencils v Chiappa* (18 NY2d 125 [1966]) and *Simcuski v Saeli* (44 NY2d 442 [1978]), held that Verizon was estopped from raising a statute of limitations defense because (assuming the complaint's allegations to be true) Verizon concealed its wrongdoing from plaintiffs and so prevented them from bringing a timely lawsuit. But *General Stencils* and *Simcuski* are not in point. In these cases, the complaints alleged both the tort that was the basis of the action and later acts of deception by which the defendants concealed their wrongdoing: In *General Stencils*, the defendant misappropriated the plaintiff's funds, and then used her position as the plaintiff's bookkeeper to cover up what she had done (18 NY2d at 126); in *Simcuski*, the defendant doctor committed malpractice and then falsely told the plaintiff that her resulting physical problems "were transient and . . . would disappear" (44 NY2d at 447). By contrast, in cases where the alleged concealment consisted of nothing but defendants' failure to disclose the wrongs they had committed, we have held that the defendants were not estopped from pleading a statute of limitations defense (*Ross v Louise Wise Servs., Inc.*, 8 NY3d 478, 491-492 [2007] [there must be a "later fraudulent misrepresentation . . . for the purpose of concealing the former tort"], citing *Zumpano v Quinn*, 6 NY3d 666, 674 [2006] [it is "fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit"]). Plaintiffs here have not alleged an act of deception, separate from the ones for which they sue, on which an equitable estoppel could be based.

Plaintiffs, relying on *Gaidon*, argue that the statute of limitations on a General Business Law § 349 action runs not from the act of deception, but from the date when the plaintiff learns, or reasonably should learn, that he or she has been deceived. But

that is not what *Gaidon* held; it held that the statute runs from the time when the plaintiff was injured (96 NY2d at 210). In *Gaidon*, the alleged deception related to the likelihood of a future event: the defendants had sold life insurance to the plaintiffs, using materials showing that, after a certain date, policy dividends would be sufficient to cover the premiums. What defendants failed to disclose was that their prediction was "wholly unrealistic" (*id.* at 211, quoting *Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d 330, 350 [1999]). In that situation, we explained, the plaintiffs were not injured, and the statute of limitations did not begin to run, until the "unrealistic expectations" that defendants had raised "were actually not met" (96 NY2d at 211-212).

This case does not involve unrealistic predictions, but alleged omissions and representations about whether Verizon was entitled, without compensation, to place its box on plaintiffs' wall. Plaintiffs' injury was suffered when, relying on those omissions and representations, they refrained from demanding either payment or removal of the box. That occurred more than three years before suit was brought, and the General Business Law § 349 claim is time-barred.

## V

█ We conclude that plaintiffs have not stated a valid unjust enrichment claim.

The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in "equity and good conscience" should be paid to the plaintiff (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 182 [2011], quoting *Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415, 421 [1972]). In a broad sense, this may be true in many cases, but unjust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled (*see Markwica v Davis*, 64 NY2d 38 [1984]; *Kirby McInerney & Squire, LLP v Hall Charne Burce & Olson, S.C.*, 15 AD3d 233 [2005]). An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382,

388-389 [1987]; *Samiento v World Yacht Inc.*, 10 NY3d 70, 81 [2008]; *Town of Wallkill v Rosenstein*, 40 AD3d 972, 974 [2d Dept 2007]).

Here, plaintiffs allege that Verizon committed actionable wrongs, by trespassing on or taking their property, and by deceiving them into thinking they were not entitled to compensation. To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects. The unjust enrichment claim should be dismissed.

## VI

■ A decision on whether to certify a case as a class action is normally reviewable by us only for abuse of discretion (*City of New York v Maul*, 14 NY3d 499, 509 [2010]; *Small v Lorillard Tobacco Co.*, 94 NY2d 43, 52-53 [1999]). The courts below did not abuse their discretion in denying class certification here.

We acknowledge that the case as described in plaintiffs' complaint, and in an expert affidavit that plaintiffs submitted, seems on its face well-suited to class action treatment. The complaint alleges that Verizon has made a practice of attaching boxes like the one in issue here to privately owned buildings in several New York City neighborhoods; and that Verizon, knowing that it is required to pay compensation when it does so, has pursued a strategy to avoid that obligation. Plaintiffs' expert, an engineer formerly employed by Verizon, described the alleged strategy, which he labeled "attach and run": He said that Verizon would simply begin attaching apparatus to buildings "without oral, let alone, written consent"; that if a property owner noticed what Verizon was doing, Verizon's employees would try "to appease the owner," but would "[i]n no event . . . volunteer" that Verizon was not within its rights or that the owner was entitled to compensation; and that after attaching a box to a building "we would simply move on to the next building, and . . . would not leave any notice behind advising the building owners of their rights."

From these assertions, it would be reasonable to infer that the case will be dominated by class-wide issues—whether Verizon's practice is lawful, and if not what the remedy should be. Plaintiffs' allegations and expert testimony would also support an inference that their claims are typical of the claims of a class of building owners.

Evidence submitted by Verizon in opposition to the class certification motion, however, told a different story. Displaying an

impressive ability to store and retrieve old records, Verizon submitted to Supreme Court a signed document dated February 9, 1911, saying that "[p]ermission is hereby granted" for the attachment of a "[c]able with terminal box" on the rear wall of the building plaintiffs now own. Plaintiffs say, perhaps correctly, that this document does not bind them, but it surely casts some doubt on their claim to be victims of an "attach and run" policy.

Verizon also submitted documents showing that William Corsello himself gave permission for Verizon to splice a cable on the rear wall of his building in 1978, and to move the box to another part of the wall in 1986. Though Mr. Corsello signed nothing on either occasion, his grant of oral permission was described in convincing detail—including, in 1986, the instruction to "[s]ee knife grinder on 1st flr or call owner Mr. Corsello [with his phone number] for access." In addition, Verizon submitted the deposition of plaintiffs' expert witness, in which, though not flatly contradicting his affidavit, the witness gave a more benign description of Verizon's policies. He said that while employed by Verizon he "would never deceive or misrepresent to the customer"; that he "would go to the customer and tell them what I was going to do"; and that he never observed any misrepresentation or deception by his Verizon coworkers.

This evidence, and other evidence Verizon presented, casts considerable doubt on whether the practice that plaintiffs' complaint and expert affidavit seemed to be describing—a practice of making use of private property furtively and without the property owners' consent—existed, or was followed in the case of plaintiffs' building. We do not imply that Verizon's evidence necessarily defeats plaintiffs' claims on the merits; but it at least shows that there is a substantial amount of proof specific to plaintiffs' building, and not common to the class, that is relevant to the case. And it is fair to infer that there will also be building-specific evidence relating to property owned by many other members of the putative class.

The courts below were clearly justified, on this record, in finding that at least two of the prerequisites to a class action were not met: the requirements that there be "questions of law or fact common to the class which predominate over any questions affecting only individual members" (CPLR 901 [a] [2]) and that "the claims . . . of the representative parties" be "typical of the claims . . . of the class" (CPLR 901 [a] [3]). Those courts did not err in denying class certification.

Accordingly, the Appellate Division's order modifying Supreme Court's order addressing Verizon's motion to dismiss (77 AD3d 344) should be modified, without costs, by reinstating plaintiffs' inverse condemnation cause of action and dismissing plaintiffs' General Business Law and unjust enrichment causes of action and, as so modified, affirmed, and the certified question relating to that order should be answered in the negative. The order of the Appellate Division affirming the denial of class action certification (76 AD3d 941) should be affirmed with costs, and the certified question relating to that order should be answered in the affirmative.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

Order of modification (77 AD3d 344 [2010]) modified, without costs, by reinstating plaintiffs' inverse condemnation cause of action and dismissing plaintiffs' General Business Law and unjust enrichment causes of action and, as so modified, affirmed, and certified question answered in the negative. Order affirming the denial of class action certification (76 AD3d 941 [2010]) affirmed, etc.