OPINION OF THE COURT
Wayne P. Saitta, J.
Plaintiff owns the property located at 470 Scott Avenue, Brooklyn, New York and claims that defendants, the Honorable Matthew J. Driscoll, as Commissioner and on behalf of the New York State Department of Transportation, and the State of New York (hereinafter the State defendants), through their contractor defendant Skanska USA Inc., have, without the plaintiffs permission, entered on its property in connection with the construction of the new Kosciuszko Bridge. Plaintiff alleges that defendants have stored equipment on its property, and erected a temporary anchor on its property, without permission. Plaintiff also alleges that the State defendants have blocked access to its property and have caused flooding on its property.
Defendant Skanska claims that plaintiff granted permission for the contractors to enter and use its property during the construction. Defendants admit that the contractors have constructed a temporary anchor that holds up part of the new bridge structure and keeps it from moving while the rest of the new structure is being constructed. One column and below-ground foundation for the temporary anchor is located on plaintiffs property and a second column and foundation is located in the bed of Thomas Street.
Defendant Skanska has submitted an affidavit of its engineer Robert L. Adams, dated November 4, 2016, in which he states that Skanska expects its use of plaintiffs property to end in December 2016. At this point defendants have apparently completed the work that required use of plaintiffs property. Plaintiff alleges that while the aboveground portion of the column has been removed, the below grade foundation has not been removed.
*640 Plaintiff commenced this action and sought a temporary restraining order and preliminary injunction enjoining the defendants from entering, storing any material, or conducting any construction work on the property. After a hearing, on July 29 and August 1, 2016, the motion for a preliminary injunction was settled by an agreement enjoining defendants from removing a retaining wall on the property but which did not require defendants to immediately quit the property.
Thereafter, plaintiff filed an amended complaint, dated September 26, 2016, which pleaded three causes of action. The first cause of action is against all defendants and alleged that they “unlawfully trespassed and illegally appropriated the property via inverse condemnation in this de facto eminent domain taking.”
The second cause of action is against all defendants, and alleged that they created a nuisance by changing the grade on the premises and causing flooding onto the premises.
The third cause of action is against defendants Skanska USA Inc., Kiewit Infrastructure Co., and E.C.C.O. Enterprises, Inc., only, and not the State defendants, and seeks $10,000,000 in damages for trespass.
With respect to the first cause of action, plaintiff seeks a permanent injunction barring all defendants from continuing to trespass upon its property and requiring them to remove all material, equipment and personnel from the property, including the portions of the street beds plaintiff claims it owns.
With respect to the second cause of action, plaintiff seeks a permanent injunction against all defendants directing them to abate the alleged nuisances caused by their activities and barring them from interfering with plaintiff’s use and enjoyment of its property.
With respect to the third cause of action, plaintiff seeks monetary damages of $10,000,000 against the non-State defendants.
The State defendants now move pursuant to CPLR 3211 (a) (2) to dismiss the first and second causes of action as against them on the grounds that the Supreme Court lacks subject matter jurisdiction to hear them.
The State defendants argue that the Court of Claims has exclusive jurisdiction of these causes of action because they are essentially actions for damages for an alleged inverse condemnation. They argue that there is no need for plaintiff to seek a *641 declaratory judgment in this court before pursuing an inverse condemnation claim against the State in the Court of Claims.
The plaintiff argues that this court has jurisdiction over these causes of action because plaintiff does not seek money damages against the State, and because it seeks injunctive relief, which the Court of Claims does not have the power to grant. Plaintiff states that it now seeks only a permanent injunction requiring removal of all structures, equipment and personnel once the construction of the bridge is completed.
Plaintiff also claims that the State has unlawfully taken portions of the roadbed of Scott Avenue and Thomas Street that are owned by the plaintiff. The State acquired a permanent easement over the roadbeds by filing acquisition maps pursuant to section 402 of the Eminent Domain Procedure Law. Plaintiff contends that because the State did not give the plaintiff notice of the taking, the occupation of the roadbeds constitutes a de facto taking.
The State argues that even if it took an easement on the roadbeds it is not required to give notice to plaintiff, only to file an acquisition map.
As a preliminary matter, any claim plaintiff may have relating to a taking of an easement over a portion of the roadbeds it owns, where the State filed an acquisition map for the roadbeds, must be filed in the Court of Claims.
The Court of Claims has exclusive jurisdiction to hear any claim against the State for appropriation of real or personal property. (Court of Claims Act § 9 [2]; EDPL 501 [A].)
Further, an owner cannot bifurcate an inverse condemnation claim by bringing a declaratory judgment action in Supreme Court to establish the State’s liability and then a claim for damages for the inverse condemnation in the Court of Claims. (Monroe Equities, LLC v New York State, 111 AD3d 803 [2d Dept 2013]; Matter of Minimax Realties v Coughlin, 132 AD2d 875 [3d Dept 1987].) However, unlike the original complaint, the amended complaint does not seek a declaratory judgment that the State’s actions constitute an inverse condemnation, so this court’s jurisdiction over a claim for a declaratory judgment is no longer an issue.
The first cause of action in the amended complaint seeks injunctive relief enjoining the defendants from continuing to occupy plaintiff’s property and requiring them to remove the alterations they made to the property, and to restore the prop *642 erty to its condition before the defendants entered the property.
The second cause of action seeks similar injunctive relief although it specifies removing an “anchor works,” as well as all personnel and construction equipment, from the premises.
While the relief sought in the two causes of action is similar the first is based on a claim of inverse condemnation and trespass, and the second is based on a claim of nuisance.
The second cause of action presents a simpler question. For the purposes of a motion to dismiss pursuant to CPLR 3211 the court must assume the allegations in the complaint to be true. The Supreme Court has jurisdiction to enjoin a nuisance even where committed by the State. (Zutt v State of New York, 50 AD3d 1131 [2d Dept 2008].)
Zutt involved a claim that the State had created a nuisance by directing storm water flow from a state highway into a ditch on plaintiffs’ property which overflowed, damaging the property. The Second Department held “although claims that are primarily against the State for damages must be brought in the Court of Claims, the Supreme Court may consider a claim for injunctive relief against the State as long as the claim is not primarily one for damages.” {Id. at 1132.) The Court allowed the claim for injunctive relief in the Supreme Court even though plaintiffs had filed a claim in the Court of Claims for damages from the flooding, sounding in trespass and nuisance. {Id.)
As the Court of Claims does not have the power to grant injunctive relief, plaintiff is entitled to bring its second cause of action, to enjoin an alleged nuisance, in the Supreme Court.
The jurisdictional question as to the first cause of action is more complicated because the cause of action is based on two theories, that of trespass and that of inverse condemnation. While injunctive relief has always been an available remedy for a continuing trespass, the traditional remedy for an inverse condemnation has been compensation through monetary damages.
Also, the distinction between a trespass and an inverse condemnation is not entirely clear, especially in the case of a temporary occupation related to construction.
The Appellate Division, Third Department held in Smith v Town of Long Lake (40 AD3d 1381 [3d Dept 2007]) that an entry onto the property of another cannot be both a trespass *643 and a taking, citing Feder v Village of Monroe (283 AD2d 548 [2d Dept 2001]).
The Court had stated in Feder:
“A de facto taking is similar to a trespass in that both require a physical entry. However, a trespass is temporary in nature, and a de facto taking is a permanent ouster of the owner, or a permanent interference with the owner’s physical use, possession, and enjoyment of the property by one having condemnation powers. An entry cannot be both a trespass and a taking because, in the latter instance, the condemnor acquires ownership.” (Id. at 549 [citations omitted].)
However, subsequently the Court of Appeals held that the actions of a party with the power to condemn property can be both a trespass and an inverse condemnation. (Corsello v Verizon N.Y., Inc., 18 NY3d 777 [2012].)
The Court in Corsello discussed the history of inverse condemnation, explaining that originally it was not a separate cause of action but an equitable remedy given to a party that had the power of eminent domain and trespassed upon the property of another without formally exercising its power of eminent domain. (Id. at 786.) The Court cited its earlier holding in Pappenheim v Metropolitan El. Ry. Co. (128 NY 436 [1891]), where it held,
“[T]he owner may resort to equity for the purpose of enjoining the continuance of the trespass, and to thus prevent a multiplicity of actions at law to recover damages; and in such an action the court may determine the amount of damage which the owner would sustain if the trespass were permanently continued, and it may provide that, upon payment of that sum, the plaintiff shall give a deed or convey the right to the defendant, and it will refuse an injunction when the defendant is willing to pay upon the receipt of a conveyance. The court does not adjudge that the defendant shall pay such sum and that the plaintiff shall so convey. It provides that, if the conveyance is made and the money paid, no injunction shall issue. If defendant refuse[s] to pay, the injunction issues.” (Corsello at 785 [citation omitted].)
A party with the power of eminent domain that trespassed was given a choice, to condemn and pay for the property, or *644 comply with an injunction against the trespass. Although the alternative offered the trespasser was to pay damages, the damages were what the court determined to be the value of the property. (Ferguson v Village of Hamburg, 272 NY 234 [1936]; Westphal v City of New York, 177 NY 140 [1904].)
The award of monetary damages was viewed to be an exercise of equity because it was an option that the party with eminent domain power could choose at its option to avoid the consequences of an injunction requiring it to leave property it took without having formally condemned the property.
Eventually, inverse condemnation came to be a cause of action by which an owner of a property could initiate to recover compensation for the taking of their property where the party with the power of eminent domain had not formally condemned the property. (Corsello at 786.)
The Court of Appeals in Corsello explicitly rejected the holding of the Third Department in Tuffley v City of Syracuse (82 AD2d 110 [4th Dept 1981]) that compensation for inverse condemnation is the only appropriate remedy where a trespasser has the power of eminent domain. The Court of Appeals held that an owner may sue a party with condemning authority for trespass. (Corsello at 786-787.) The Court of Appeals stated,
“We do not imply that an entity having—but not having expressly exercised—the power of eminent domain may be heard to claim, to its own advantage, that it has accomplished a de facto taking, and may not be sued for trespass or ejectment. It may well be, though we do not now decide, that there are some occupations of property that may be treated either as trespasses or takings, at the property owner’s option. And, of course, nothing we say here prevents an entity that has eminent domain power from overtly exercising that power when it wants to remain in possession of property it has occupied.” (Id. at 787.)
There is no bright line that distinguishes a continuing trespass from an inverse condemnation. The permanency of the incursion has most often been cited as a factor in distinguishing a trespass from a de facto taking. (Corsello v Verizon N.Y., Inc., 18 NY3d 777 [2012]; Smith v Town of Long Lake, 40 AD3d 1381 [3d Dept 2007].)
However, what may commonly be viewed as permanent may not necessarily be so. Telephone wires attached to a building, *645 as in Corsello, are not truly permanent as they can easily be removed and the building to which they were attached can be restored to its original condition. Buildings or other structures can be removed and a property restored to its previous condition. Even a highway that causes flooding to another property can be altered to redirect the water.
Conversely, formal exercises of eminent domain are not necessarily permanent. Condemning authorities regularly take temporary easements during construction projects. There is no meaningful difference between a de facto temporary construction easement and a trespass. In this present case, the actions of the State’s contractors, if plaintiff’s allegations are true, constitute both a continuing trespass and a de facto taking of a temporary construction easement.
In determining whether the Supreme Court has jurisdiction over the first cause of action, a more useful approach than attempting to create an artificial distinction between a continuing trespass and a temporary inverse taking is to focus on the appropriate remedy. That is, under the specific facts of this case whether a balancing of the equities favors granting an injunction to bar the continuing use or occupation of the property, as opposed to limiting the owner to compensation. In balancing the equities, it must be taken into account that the trespasser always has the option to formally condemn the property if an injunction is granted.
The parties disagree whether the complaint only seeks an injunction requiring defendants to leave the property and remove all structures, equipment and personnel once the construction on the bridge is complete. It appears, based on argument of counsel, that defendants have completed that portion of the construction that requires use of plaintiff’s property and the only remaining structure on the building is the below-ground foundation for the supporting anchor that has been removed. The anchor was constructed only as a temporary support of the new bridge during its construction.
However, the extent to which the State or its contractors are still occupying the property need not be resolved to determine the question of jurisdiction. Whether or not the equities of the situation favor granting a permanent injunction must be decided after it has been determined that the entry and occupation of the land is without permission of the owner. Only then must the court determine, in light of the extent of the occupation continuing at that time, whether the equities favor granting an injunction.
*646 However, based on the record in this case to date, granting injunctive relief would not be infeasible or impracticable, and thus this court has jurisdiction to hear plaintiffs claims for injunctive relief.
Wherefore, the State defendants’ motion to strike the amended complaint is granted only to the extent of dismissing that portion of the first cause of action based on a claim of a de facto taking or inverse condemnation of the roadbeds of Scott Avenue and Thomas Street, and it is hereby ordered that only that portion of the first cause of action based on a claim of inverse condemnation of the roadbeds of Scott Avenue and Thomas Street is dismissed, without prejudice to plaintiff commencing an action in the Court of Claims.