**Brach v Oxford Fin. LLC**

2025 NY Slip Op 34404(U)

November 17, 2025

Supreme Court, Kings County

Docket Number: Index No. 532863/2021

Judge: Reginald A. Boddie

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Commercial Part 12 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, located at 360 Adams Street, Borough of Brooklyn, City and State of New York on the 17th day of November 2025.

P R E S E N T :
Honorable Reginald A. Boddie
Justice, Supreme Court

-------------------------------------------------------------------x

ZIGMOND BRACH,

                     Plaintiff,

            -against-

OXFORD FINANCE LLC,

                 Defendant.

-------------------------------------------------------------------x

Index No. 532863/2021

Cal. 5-6   MS 2-3

**Decision and Order**

The following e-filed papers read herein:
MS 2
MS 3

NYSCEF Doc Nos.
51-73, 110-127, 133-137
74-108, 128-132

Defendant's motion for summary judgment (Motion Sequence 2) and plaintiff's motion for summary judgment (Motion Sequence 3) are decided as follows:

### Background

This action arises out of defendant Oxford Finance LLC's alleged failure to reimburse plaintiff Zigmond Brach for approximately $401,616.68 in advances he made to cover operating shortfalls at Grosvenor Health Center ("Grosvenor"), after defendant had promised to repay those funds as part of plaintiff's "Break-up Fee" when it credit-bid and acquired the assets at an August 2018 auction. Plaintiff asserts claims for breach of contract, fraud, and unjust enrichment arising from defendant's alleged refusal to honor that commitment.

1

[* 1]

Defendant moves for summary judgment seeking dismissal of the complaint in its entirety with prejudice, arguing that the undisputed evidence shows that all three of plaintiff's claims fail as a matter of law. Defendant contends that there was never an enforceable agreement for it to reimburse plaintiff's Grosvenor advances; instead, there was only a clear, documented agreement to reimburse advances to Woodbriar Health Center ("Woodbriar") as a § 503(b) break-up fee in the bankruptcy, and that the July 13, 2018 email plaintiff relied upon was at most an unenforceable "agreement to agree" whose conditions were never satisfied. Defendamt further argues that the fraud claim has no factual basis because there was no false promise or justifiable reliance, especially when contrasted with the explicit written commitment for Woodbriar but not for Grosvenor, and that the unjust enrichment claim fails because plaintiff's advances to Grosvenor primarily benefitted himself as an owner by keeping the facility operating, with any benefit to Oxford being incidental and not at plaintiff's "expense."

In opposition, plaintiff argues that there was a clear and enforceable agreement under which defendant promised to reimburse him for all operating advances made to both the Woodbriar and Grosvenor nursing homes, that defendant confirmed this commitment in writing, and that defendant's later refusal to repay the Grosvenor advances was a breach of that agreement. Plaintiff further contends that even if defendant now denies any contract, its assurances were fraudulent since they were made to induce him to advance funds defendant otherwise would have had to supply itself, and that defendant was unjustly enriched by benefiting from those emergency payments. Plaintiff contends that both facilities were treated as a single sale transaction, that defendant's conditions for reimbursement were all satisfied, and that the funds were advanced solely to prevent closure of Grosvenor and protect defendant's collateral, not to preserve plaintiff's own investment, thus precluding dismissal and instead warranting summary judgment in his favor.

2

[* 2]

In reply, defendant reasserts that there was no enforceable agreement to reimburse plaintiff's Grosvenor advances: the July 13, 2018 email was not a contract but, at most, a reminder of prior discussions conditioned on a cash bid or plaintiff as winning bidder, appointment of a Grosvenor receiver, and verification of the shortfall's legitimacy, none of which were satisfied given that the winning bid was a credit bid, the receiver was not appointed until after the advances, and the legitimacy of the shortfall could not be confirmed without a receiver. Defendant further contends that the fraud claim fails because it rests on a non-existent contract, and that unjust enrichment is barred as a matter of law since plaintiff, as a part owner of Grosvenor, admittedly advanced funds to protect his own investment and thus personally benefited from keeping the facility open, making any benefit to defendant at most incidental.

Plaintiff also moves for summary judgment on his breach of contract, fraud, and unjust enrichment claims, asserting that defendant agreed to reimburse all his advances, including those to Grosvenor, under the bankruptcy court Order approving bid procedures, the July 13, 2018 email, and statements at the auction. Plaintiff maintains that defendant's refusal to repay those funds breached a binding agreement, that defendant's assurances were knowingly false and induced his reliance, and that Oxford was unjustly enriched because his emergency payments preserved defendant's collateral and enabled its profitable sale.

In opposition, defendant argues that because there was never any enforceable agreement to reimburse plaintiff for Grosvenor advances: the term sheet was only a draft, the bid procedures and break-up fee, as approved by the Bankruptcy Court, covered only Woodbriar and post-receivership obligations, and the July 13 email was at most a conditional "agreement to agree" whose conditions were never met. Defendant further contends that plaintiff's supporting affirmations are self-serving and contradicted by the record, that the fraud claim fails for lack of any false representation or actual agreement, and that unjust enrichment is barred because plaintiff

3

[* 3]

voluntarily paid to protect his own investment and thus benefitted himself, with any benefit to Oxford being merely incidental.

In reply, plaintiff underscores that there was a single, enforceable agreement for defendant to reimburse all of plaintiff's operating advances for both Woodbriar and Grosvenor, evidenced by the March 2018 understanding, the stalking-horse structure, the bid procedures, the July 13 "we had said" email, and Weiss's auction statements, none of which were limited to Woodbriar or post-receivership payments. Plaintiff claims his later emails were just requests for assurances under an existing deal, not proof no agreement existed. On unjust enrichment, plaintiff argues the Grosvenor advances did not protect his own investment but instead spared defendant from having to make emergency protective advances and suffering a shutdown, and that the voluntary-payment doctrine does not apply since plaintiff advanced funds in reliance on defendant's assurances and without knowing defendant never intended to reimburse him.

## Discussion

It is well established that summary judgment is granted when "the proponent makes a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact, and the opponent fails to rebut that showing" (*Brandy B. v Eden Cent. School Dist.*, 15 NY3d 297, 302 [2010] [citation omitted]). Once the proponent has made a prima facie showing, the burden then shifts to the motion's opponent to present evidentiary facts in admissible form sufficient to raise a genuine, triable issue of fact (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]). Upon a motion for summary judgment, the court's function is one of issue finding rather than issue determination (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957]). "It is not the function of a court . . . to make credibility

4

determinations or findings of fact, but rather to identify material triable issues of fact (or point to the lack thereof)" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 505 [2012] [citation omitted]).

### *Breach of Contract*

"The essential elements of a cause of action to recover damages for breach of contract are (1) the existence of a contract, (2) the plaintiff's performance pursuant to the contract, (3) the defendant's breach of its contractual obligations, and (4) damages resulting from the breach" (*Junger v John V. Dinan Assoc., Inc.*, 164 AD3d 1428, 1430 [2d Dept 2018] [citations omitted]). "[W]hile the existence of a contract is a question of fact, the question of whether a certain or undisputed state of facts establishes a contract is one of law for the courts" (*Jabczynski v Advanced Drying and Restoration*, 139 AD3d 1407, 1408 [4th Dept 2016] [citations omitted]). "It is well established that a contract is unenforceable where there is no meeting of the minds between the parties thereto regarding a material element thereof" (*Brands v Urban*, 182 AD2d 287, 289 [2d Dept 1992] [citations omitted]). "If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract" (Kensington Ct. Assoc. v Gullo, 180 AD2d 888, 889 [3d Dept 1992] [citations omitted]).

In the instant case, plaintiff primarily relies on an email dated July 13, 2018, sent by defendant's attorney, John Weiss, Esq., and forwarded by defendant's managing director, Joseph Somerset, to plaintiff's representative, Sam Wiesner. The email stated:

> "I'm not sure what Sam W is waiting for from us. We had said that if we all agree to the appointment of a receiver for Grosvenor and to move the auction to the week of August 27 that we would agree that the new Brach money to cover the payroll shortfall could be repaid first out of a cash bid or be used as a reduction to the bid of the stalking horse, subject only to all of us making sure the shortfall was legitimate."

Plaintiff contends that he "advanced $90,000 immediately in reliance on the statement by Oxford and Somerset's forwarding of the [July 13, 2018] email." However, the language of the July 13 email does not reflect any present, binding contractual commitment on the part of Oxford.

**5**

[* 5]

Instead, it is expressly conditional and forward-looking: Oxford stated it "would agree" that plaintiff's advances "could be repaid" if specified contingencies occurred, namely (i) all parties' agreement to appoint a receiver for Grosvenor, (ii) rescheduling the auction, (iii) verifying the legitimacy of the shortfall, and (iv) either the winning bid was a cash bid or plaintiff prevailed as the stalking horse bidder. Plaintiff identifies no other writing or communication demonstrating definite reimbursement terms, mutual assent, or a meeting of the minds regarding repayment of advances made to Grosvenor.

Even assuming the July 13 email could be construed as an offer, plaintiff fails to show that the stated conditions were ever fulfilled. Defendant alleges, and plaintiff does not dispute, that (i) the winning bid was a credit bid, not a cash bid; (ii) plaintiff was not the winning bidder; (iii) no receiver had yet been appointed at the time of the payroll shortfall or plaintiff's advance; and (iv) the receiver was appointed only three days after plaintiff's final advance to Grosvenor. These undisputed facts establish that the proposed conditions precedent identified in the July 13 email were not satisfied.

As to the bid procedures and the bankruptcy court's order plaintiff highlighted, those documents concern only Woodbriar, the debtor in bankruptcy, and impose no reimbursement obligation for Grosvenor, a non-debtor facility. Likewise, the April 2018 term sheet was never executed and merely reflected preliminary discussions rather than any consummated agreement evidencing mutual assent.

Based on the foregoing, as plaintiff has failed to demonstrate the existence of an enforceable contract obligating defendant to reimburse his Grosvenor advances, the first cause of action alleging breach of contract is dismissed.

6

[* 6]

*Fraud*

"The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages" (*Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009] [citations omitted]).

Here, plaintiff's fraud claim is premised on the assertion that defendant's "July 13, 2018 email was ... a statement that an agreement was already in place under which Oxford had agreed to reimburse Brach," while defendant's internal email circulated days earlier from Somerset stated "that Oxford had no intention of reimbursing the Grosvenor advances." Plaintiff contends that the July 13, 2018 email was therefore a false representation on which he relied in making the advances.

Plaintiff's arguments are unavailing. As discussed above, the July 13, 2018 email does not demonstrate that any agreement already existed; nor does it contain any present promise of reimbursement. Rather, the email is expressly conditional and forward-looking, stating only that Oxford "would agree" that plaintiff's advances "could be repaid" if several contingencies occurred. Such statement does not constitute a misrepresentation of existing fact and cannot support a fraud claim. Where the underlying communication is not a binding agreement for purposes of a contract claim, it likewise cannot form the basis of a claim that defendant misrepresented the existence of such an agreement.

Accordingly, the second cause of action alleging fraud is dismissed.

*Unjust Enrichment*

"To prevail on a claim of unjust enrichment, a plaintiff must establish that the defendant benefitted at the plaintiff's expense and that equity and good conscience require restitution" (*Whitman Realty Group, Inc. v Galano*, 41 AD3d 590, 592-593 [2d Dept 2007]). "Enrichment

[* 7]

alone will not suffice to invoke the remedial powers of a court of equity" (*McGrath v Hilding*, 41 NY2d 625, 629 [1977]).

"The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in "equity and good conscience" should be paid to the plaintiff" (Corsello v Verizon New York, Inc., 18 NY3d 777, 790 [2012] [citation omitted]). "In a broad sense, this may be true in many cases, but unjust enrichment is not a catchall cause of action to be used when others fail" (*id.*). "It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff" (*id.*). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim" (*id.*).

Here, plaintiff fails to establish that defendant was unjustly enriched at plaintiff's expense. It is undisputed that plaintiff partially owned Grosvenor and had a vested interest in its continued operation at the time of advances. As Mr. Wiesner testified, plaintiff "want[ed] the [Grosvenor] facility to do well" because "Mr. Brach had a fortune of money invested there." The advances were made to Grosvenor to meet its payroll and operating expenses, not to Oxford, and plaintiff was protecting his own investment interest in that facility. Further, the unjust enrichment claim rests on the same factual allegations underlying plaintiff's breach of contract and fraud theories, both of which are dismissed above.

Accordingly, the third cause of action alleging unjust enrichment is dismissed.

## Conclusion

Based on the foregoing, plaintiff's motion for summary judgment is denied in its entirety. Defendant's motion for summary judgment is granted, and the instant action is dismissed in its entirety.

8

[* 8]

Any argument not explicitly addressed herein was considered and deemed to be without merit or unnecessary to address given the court's determination.

ENTER:

_____
Honorable Reginald A. Boddie
Justice, Supreme Court

HON. REGINALD A. BODDIE
J.S.C.

**9**